[Civ. No. 28192. Second Dist., Div. One. Dec. 30, 1964.]

MURRAY MISHALOW et al., Plaintiffs and Appellants, v. SYLVAN H. HORWALD, Defendant and Respondent.

William P. Camusi and A. P. G. Steffes for Plaintiffs and Appellants.

Early, Maslach, Foran & Williams and Kenneth Wechsler, for Defendant and Respondent.

LILLIE, J.—On November 1, 1960, plaintiffs, mother and father of the deceased, sued Drs. Kaufman, Pomeranz and Calmenson and several Does alleged that on June 6, 1960, their 11-year-old son was seriously injured when he fell out of a tree; that they employed defendants "to diagnose, treat and care" for him; and that defendants' negligence caused his death on June 10, 1960. All defendants answered; depositions were taken; on pretrial all unserved Does, save one, were dismissed; and trial was set. On April 24, 1963, Sylvan H. Horwald, M.D., respondent herein, was served as Doe I; he filed an answer; an amended pretrial order substituted him in place of Doe I; and a new trial date was ordered. He then moved for summary judgment on the ground that the statute of limitations (Code Civ. Proc., § 340, subd. 3) barred the action as to him; the motion, heard on affidavits, was granted, and judgment was entered in his favor. Plaintiffs appeal from the judgment.

Appellants concede that they knew the true name of Dr. Horwald, as the anesthesiologist who attended their son, but claim, and the same is borne out by affidavits, that *at the time they filed their complaint* they were ignorant of any facts which would give them a cause of action against him.

In his affidavit in support of his motion, Horwald says that as early as June 9, 1960, plaintiffs knew his name and that he

was the anesthesiologist present at the child's surgery; there is no issue concerning this. His counsel avers that on March 14, 1961, plaintiff mother said in her deposition that her son "hadn't come out of the anesthetic yet and it seemed to be a little unduly long, unusually long, for him to have come out."

Plaintiffs' counsel executed two opposing affidavits. They show that plaintiffs retained him to bring an action for malpractice against three doctors—Kaufman, Pomeranz and Calmenson—and gave him what information they had, and at that time their only basis for complaint was the doctors' unreasonable delay of in excess of 48 hours in performing a splenectomy on their son who, according to the diagnosis of Dr. Kaufman, had a ruptured spleen; that he and plaintiffs believed, at the time the complaint was filed, that the sole proximate cause of the child's death was the unreasonable delay in removal of the spleen; that at that time plaintiffs had no information relative to what occurred in surgery, were unable to and did not give him any information which cast suspicion on the competency of, or role played by, respondent, had no information or knowledge which tended to indicate any negligence on Horwald's part, and knew nothing concerning the activities of the anesthesiologist; that at the time of filing the complaint, neither he nor plaintiffs had seen any medical or hospital records, they having become available to them only when later they were obtained by him on a subpoena duces tecum *in re* deposition of Valley Doctors' Hospital, and then, the records indicated that nothing of an unusual nature had occurred during surgery except that the child, who otherwise seemed in good condition, sustained a respiratory arrest from which he never recovered, followed by death approximately 48 hours later; that in November 1962 the depositions of the three defendant doctors were taken but nothing said by them indicated any negligence on the part of the anesthesiologist and nothing respondent said in his own deposition, taken January 25, 1963, indicated negligence on his part; that nothing in the hospital records or depositions showed why the child died or the cause of death, and all of the doctors, in their depositions, said they did not know the cause of death and agreed that the autopsy report did not reflect the true cause; that having no knowledge of any facts implicating respondent and believing that the matter was ready for trial, he engaged in a pretrial conference; that in previously preparing the case for trial he had no reason to consult with an anesthesiologist and did not do so, however, early in

April 1963 he, for the first time consulted his own anesthesiologist and learned from him certain facts of a technical nature known only to medical experts and not appearing in the depositions or medical records and charts—that death following respiratory arrest is not expected in the absence of negligence, that respiratory arrest properly treated should not lead to death, that the child developed edema of the brain which was the cause of death, that the edema was, in part, the result of a respiratory depression which was improperly treated and led to hypoxia placing him in irreversible shock, which, in turn, caused a reduction in the amount of oxygen delivered to the brain contributing to the resulting edema and death; and that after talking to the anesthesiologist he (counsel) concluded he had no alternative but to serve respondent and did so immediately thereafter, on April 23, 1963, a second pretrial hearing was had, and the order was amended to include respondent.

█ The allegations of the complaint—that defendants so carelessly and negligently diagnosed, treated, operated and cared for the child as to cause him to die—necessarily included, and properly stated a cause of action against, the defendants designated by fictitious names; (*Austin* v. *Massachusetts Bonding & Ins. Co.*, 56 Cal.2d 596, 600 [15 Cal.Rptr. 817, 364 P.2d 681] ; *Johnson* v. *Goodyear Tire & Rubber Co.*, 216 Cal.App.2d 133, 136 [30 Cal.Rptr. 650]) and inasmuch as the anesthesiologist was one of those who treated and cared for the child, the cause of action pleaded applies as well to Dr. Horwald. █ Thus, the issue is whether plaintiffs are barred by the one year statute of limitations from subsequently serving Dr. Horwald as Doe I; we conclude that they are not.

While plaintiffs and their counsel, at the time of filing the complaint, knew of respondent, it is clear that they then had no knowledge or information from which it could be inferred that respondent was negligent; they discovered no facts indicating a cause of action against him until April 1963, immediately after which he was served. It may well be a matter of common knowledge, as suggested by respondent, that a failure or reduction in a patient's breathing during surgery is vital to an anesthesiologist and that respiratory arrest is a condition properly within the scope of his treatment, but it is clear from the record before us that at the time of filing the complaint neither plaintiffs nor their counsel knew that the child had sustained a respiratory arrest, or that there was a

failure or reduction in his breathing during surgery, or the true cause of death, for at that time they had not seen the hospital records. They became available to them, and they first saw the records, long after the suit was filed when they were obtained on subpoena duces tecum *in re* deposition. Respondent comments that the records were available since June 10, 1960, but the contrary is shown by plaintiffs' affidavits, not controverted by respondent under oath; moreover, it is a matter of common knowledge that hospitals do not voluntarily make available their records to those contemplating legal action for malpractice or to their counsel. Further, it appears that had they seen the records prior to filing the complaint, the information contained therein would have imparted nothing from which negligence of respondent could have been inferred; they do not reveal the full circumstances surrounding the cause of death and nothing in them or the deposition indicates how or why the child died, or any other matters relative to a respiratory depression or respondent's treatment of it. That the boy was under the anesthetic ''a little unduly long,'' as described by his mother, in itself is no indication of medical malpractice; if anything, all it meant to plaintiffs, who are laymen, was that the three named doctors had delayed too long in performing surgery, their child had died after the splenectomy and the delay in operating was the cause of his death. It is this they complained of to their counsel at the time of filing their action and it was upon this theory alone that the same was based and was to be tried (joint pretrial statement). Certainly, under the circumstances at bar, any delay in attempting surgery could not be blamed on the anesthesiologist. Counsel's only reason for retaining one Doe in the case was that it was his belief that in a malpractice case ''there is a reasonable possibility that blame may be placed on some other doctor during the course of the proceedings.''

Section 474, Code of Civil Procedure, permits a defendant to be designated by a fictitious name if plaintiff is ignorant of his true name. The court in *Johnson* v. *Goodyear Tire & Rubber Co.* (1963) 216 Cal.App.2d 133 at page 137 [30 Cal.Rptr. 650], cited with approval the interpretation of this statute given by Chadbourn, Grossman and Van Alstyne, California Pleading, Civil Actions, section 505: '' 'The better view, and the one most consistent with the purpose of the fictitious name statute, it is submitted, would permit the plaintiff to proceed under the statute where the failure to name

the defendant in the complaint was due to ignorance of either his true name, or of the facts linking such defendant with the cause of action sued on. In either event the plaintiff would appear to be "ignorant of the name of a defendant" within the spirit and letter of section 474, although for different reasons.' " Following this view are the cases of *Larson* v. *Barnett* (1950) 101 Cal.App.2d 282 [225 P.2d 297] and *Johnson* v. *Goodyear Tire & Rubber Co.* (1963) 216 Cal.App. 2d 133 [30 Cal.Rptr. 650]) which are dispositive of the issue here. In *Larson* v. *Barnett, supra,* plaintiffs, at the time they filed suit, knew appellant's true name but were ignorant of any facts that would give them a cause of action against him —they were unaware that he was owner of the automobile; plaintiffs had assumed a corporation was the owner. It was only after depositions were taken that plaintiffs discovered that appellant owned the automobile. The court held that where the name of a defendant is known to the plaintiffs but is omitted from the complaint because they do not then know of facts giving rise to a cause of action against him, defendant may be served and made a party under one of the fictitious names designated in the complaint. In *Johnson* v. *Goodyear Tire & Rubber Co.* (1963) 216 Cal.App.2d 133 [30 Cal.Rptr. 650] : "[P]laintiff knew the defendants whom he designated by fictitious names, and all the facts giving him a cause of action against them, but was unaware of having such a cause of action [under the law]." (P. 139.) In *Austin* v. *Massachusetts Bonding & Ins. Co.* (1961) 56 Cal.2d 596 [15 Cal. Rptr. 817, 364 P.2d 681], plaintiffs did not know the true name of Massachusetts Bonding at the time they filed their original complaint but they were allowed, upon the same facts pleaded therein against other defendants, to state a new cause of action which in fact existed at the time the original complaint was filed of which plaintiffs claimed to be unaware.

Much has been said by respondent concerning what plaintiffs and their counsel knew or could have known *after* the filing of the complaint, but this is not the issue. ■■ It is only that knowledge plaintiffs have at the time of filing suit that determines whether a particular defendant may be sued and served as a fictitious named defendant. (*Johnson* v. *Goodyear Tire & Rubber Co.* (1963) 216 Cal.App.2d 133 [30 Cal.Rptr. 650] ; *Larson* v. *Barnett* (1950) 101 Cal.App.2d 282 [225 P.2d 297].) In *Johnson, supra,* plaintiff in 1959 sued Culver Motors, from whom he had purchased a Ford involved in the accident, and Does I to X for breach of warranty. Although

he then knew of Ford Motor Co. and Goodyear Tire & Rubber Co., having previously filed suit against them in a federal court on the same accident, he was unaware that under the law the same facts gave him a like cause of action against them; subsequent to 1959, certain decisions and textual writings indicated he also had a legal right against Ford and Goodyear for breach of warranty, and he immediately served them as Does I and II. The court said that while plaintiff at all times knew the true names of Ford and Goodyear, he ". . . states that he was unaware, *at the time he filed suit,* that these facts constituted a cause of action against Ford and Goodyear, and that he became aware of his alleged cause of action only by reason of decisions and textual writings subsequent to 1959." (P. 137.) The issue was "whether section 474 allows the original designation of a defendant by a fictitious name in a situation where plaintiff knew the true name of the defendant and knew all of the facts giving rise to a cause of action against him, but was unaware *at the time of filing* that he had such cause of action." (P. 137.) (Italics added.) The court held that it does. Alike on this point is *Larson* v. *Barnett* (1950) 101 Cal.App.2d 282 [225 P.2d 297]. Said the court therein: "It is clear enough that respondents, *when they filed their action* . . . did not know the true name of such owner or owners [of the vehicle]. Believing that such owner or owners, however, existed, they had a right under the code to sue such party or parties by fictitious names and the court, we hold, was fully justified in denying the motion to dismiss as to Barnett, Sr.; in treating him as having been a party from the beginning of the action; and in denying his defense based upon the statute of limitations, which defense, of course, would fail once it was justifiably found that he had been such party from the beginning. The construction of the code section contended for by appellants, that respondents could not sue the owner or owners under fictitious names because when the complaint was filed respondents happened to know the name of Barnett, Sr., though they did not know that he was also the party they were seeking to hold as such owner, would be so narrow a construction as in large measure to defeat the beneficent purpose of the statute." (Pp. 288, 289.) (Italics added.)

Respondent argues that plaintiffs could have sooner discovered the information; but the fact is, as stated in counsel's affidavits and not denied under oath, that the same was not available to them. ▇ However, whether plaintiffs could

or could not have ascertained the same before suit was filed is immaterial to the issue here, for ignorance of the facts is the critical issue, and whether it be due to misfortune or negligence is not relevant. In *Irving* v. *Carpentier,* 70 Cal. 23 [11 P. 391], plaintiff could have ascertained the true name of defendant by searching the records. Said the court: "The counsel for respondent herein likens this case to that of a party allowed to bring an action for relief on the ground of fraud, in which case the cause of action is not deemed to have accrued until the discovery by the party aggrieved of the facts constituting the fraud. In construing this rule, it has always been held that a party discovers the fraud when by the use of reasonable diligence he might have ascertained the facts constituting the fraud. But the rule prescribed by the statute in this case is entirely different. It is when he is actually ignorant of a certain fact, not when he might by the use of reasonable diligence have discovered it. Whether his ignorance is from misfortune or negligence, he is alike ignorant, and this is all the statute requires. This is the true meaning of the statute. We adopt it the more readily because the party thus brought in as a defendant loses no rights by it." (P. 26.) The above was relied upon by the court in *Larson* v. *Barnett,* 101 Cal.App.2d 282, 289, 290 [225 P.2d 297]. Likewise, in *Austin* v. *Massachusetts Bonding & Ins. Co.* (1961) 56 Cal.2d 596 [15 Cal.Rptr. 817, 364 P.2d 681], plaintiffs did not know the true name of Massachusetts Bonding at the time they filed the complaint, but it appears that they could well have ascertained the identity of the surety for the bond was on file as a public record. In any event, there is no showing of negligence on the part of either plaintiffs or their counsel in ascertaining information relative to respondent at the time they filed the complaint; and it is clear that immediately after counsel discovered facts which he believed implicated respondent he took the necessary action under section 474.

Respondent's contention that if he is retained as a party defendant he will suffer prejudice, was resolved adversely in *Larson* v. *Barnett,* 101 Cal.App.2d 282, 290 [225 P.2d 297], and *Irving* v. *Carpentier,* 70 Cal. 23, 26 [11 P. 391]. Said the court in *Irving*: "The statute above referred to [Code Civ. Proc., § 474] is an enabling one, and should be so construed as to cure the evil it was designed to correct and advance the remedy. Persons are sometimes compelled to bring suits in haste. They have not time to ascertain the true names

of parties to be made defendants. The statute of limitations may, in a day from the time the preparation of the complaint is commenced, effect a bar. Sometimes there is no means readily accessible of ascertaining the true names. The statute above referred to was enacted to afford a remedy in such cases. Should a plaintiff lose his right to have his case tried because of ignorance of the names of parties whom he has a right to sue, and as to whom he may have a good cause of action? How is the party sued by a name not his own injured? He loses no right by allowing a plaintiff to proceed as provided by the statute. He has every opportunity accorded to any other defendant to make his defense. He can demur or file his answer, and set up every defense which he is advised he can rely on.'' (P. 26.)

For the foregoing reasons the judgment is reversed.

Wood, P. J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 24, 1965.