[Civ. No. 11592.   Third Dist.   Nov. 4, 1968.]

VICTOR E. BRECEDA, Plaintiff and Appellant, v. JAY F. GAMSBY, Defendant and Respondent.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

168

Richard E. Crow and Hurley & Bigler for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Edward T. Moran, Mitchell & Henderson, and Roger W. Sleight for Defendant and Respondent.

PIERCE, P. J.—This is a pleading case. The trial court held that the statute of limitations had barred the action against the defendant Jay F. Gamsby. The original complaint was filed before the running of the applicable statute of limitations (Code Civ. Proc., § 340, subd. 3—one year). Doe defendants were named under Code of Civil Procedure section 474, which permits unknown defendants to be sued originally under fictitious names with their true names substituted when ascertained. Gamsby was named, substituted and served as a Doe defendant, and two amended complaints were filed, all more than one year after the accident-producing injuries had occurred. The court found the procedure adopted as applied to Gamsby was improper. We disagree. Preceded by basic facts our reasoning, supplemented by additional facts, will be discussed under appropriate headings below.

Under the original complaint filed May 9, 1962, plaintiff, Victor E. Breceda, alleged that on May 23, 1961, while working for Arcata Lumber Services, Inc., he suffered injuries when a large stack of lumber fell upon him. He alleged the lumber fell due to the "dangerous and defective" condition of a forklift. The injuries were serious. It appears in the

record that proceedings were had for benefits under the workmen's compensation law, such proceedings being against Arcata's insurer, State Compensation Insurance Fund (hereafter "Fund"). The original complaint filed in this superior court action also was centered against Fund. It was alleged that Fund had undertaken to make safety inspections in its contract of insurance with Arcata and had breached its contract (of which Breceda was a third party beneficiary) by its failure to do so. That cause of action is not involved in these proceedings.[1] In that same count of the original complaint, plaintiff essayed another claim of relief. He named ten Doe defendants under the standard allegation, averring that when their true names were learned the complaint would be amended "to show their true names and capacities when the same have been ascertained." Also alleged is "that each of the defendants designated herein as DOE is negligently responsible in some manner for the events and happenings herein referred to and negligently and proximately caused the injury and damage to plaintiff herein alleged."

On December 18, 1963, plaintiff filed an amended complaint. In it Gamsby was alleged to be the person originally sued as Doe I. It alleged that plaintiff was operating the forklift when he was injured. It was also averred that Gamsby was secretary-treasurer of Arcata and was in full charge of the lumber yard and that, "in reckless disregard of the health and safety of plaintiff . . . and with a calculated and conscious willingness to expose plaintiff . . . to the risk of injury from falling lumber," Gamsby had ordered that a guard designed to protect the operator be removed from the forklift. A second amended complaint was filed November 27, 1964. It merely added that Gamsby had also "permitted" the removal of the guard from the forklift. The purpose of the two amendments was to state a cause of action under Labor Code, section 3601, subdivision (a)(3). That subdivision preserves the right of an injured employee to bring an action against a fellow employee when the act of the latter "evinces a reckless disregard for the safety of the employee injured, and a calculated and conscious willingness to permit injury . . . to such employee."

Gamsby's answer pleaded the bar of the statute of limita-

---

[1]In *State Comp. Ins. Fund* v. *Superior Court* (1965) 237 Cal.App.2d 416 [46 Cal.Rptr. 891], we held the superior court was without jurisdiction in such an action.

tions.[2] A separate trial on the issue of the bar of the statute was ordered under Code of Civil Procedure section 597. At such separate trial the trial court ruled as stated and entered judgment in favor of Gamsby. The appeal is from that judgment.

The critical question to be determined is the bona fides of the substitution of Gamsby by name for a fictitiously named defendant under Code of Civil Procedure section 474. Several hurdles must be cleared before that question is reached. We approach the first.

## WHEN DO SUBSEQUENT AMENDMENTS "REFER BACK" TO THE DATE OF AN ORIGINAL COMPLAINT AND THUS TOLL THE STATUTE OF LIMITATIONS?

In *Austin* v. *Massachusetts Bonding & Ins. Co.* (1961) 56 Cal.2d 596, it is stated on page 600 [15 Cal.Rptr. 817, 364 P.2d 681] : "The modern rule with respect to actions involving parties designated by their true names in the original complaint is that, where an amendment is sought after the statute of limitations has run, the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings *on the same general set of facts*."[3] (Italics added.) At the outset it will be

[2]On appeal Gamsby does not argue an issue raised in the trial court in his motion for judgment on the pleadings that since he was in full and complete charge of Arcata's lumber yard he was an "employer" under Labor Code section 6304 and that workmen's compensation was plaintiff's exclusive remedy. Section 6304 defines an employer as including "every person having direction, management, control, or custody of any . . . place of employment. . . ." The court correctly denied Gamsby's motion. Section 6301 expressly restricts the expanded definition of "employer" in section 6304 to its use in part 1 of division V of the Labor Code. Part 1 prescribes special statutory duties. It does not circumscribe the common law remedies that are preserved by the exceptions stated in Labor Code section 3601. In three earlier cases we pointed out that a supervisorial co-employee might thus be a section 6304 "employer" and subject to those statutory standards of care, while at the same time he remained a fellow employee for purposes of common law liability. (See *Mason* v. *Case* (1963) 220 Cal.App.2d 170 [33 Cal.Rptr. 710]; *Cravens* v. *Kurtz* (1962) 210 Cal.App.2d 810 [26 Cal.Rptr. 802]; *Jackson* v. *Georgia-Pacific, Inc.* (1961) 195 Cal.App.2d 412 [15 Cal.Rptr. 680].)

[3]That was not always the rule. The *Austin* opinion (on pp. 600-602) traces the rule through its permutations. Early cases cited in the opinion (to repeat which would be unnecessarily duplicative) had said that any new cause of action could not relate back, i.e., a plaintiff was not permitted "to change the legal theory of his action." Cases expounding that rule were decided in the 19th century. The first relaxation of the rule permitted relation back even though the legal theory was changed unless the amendment set forth " 'a wholly different cause of action,' i.e., 'a wholly different legal liability. . . .' " (P. 601.) That was during the period 1936-1941. *Wennerholm* v. *Stanford University School of*

noted that the phrase "on the same general set of facts," which defines the limit of relation back in *Austin*, and the language "conduct, transaction, *or* occurrence" (note use of the disjunctive) in the federal rule offer considerable room for judicial disagreement in their application. In the *Austin* case the original complaint alleged that the "defendants" (which included "Does") acted as brokers and agents for plaintiffs and refused to deliver securities and moneys which they had received on behalf of plaintiffs. The amended complaint alleged the same defalcations but sued the surety company ("Massachusetts") on a faithful performance bond which it had written as required by law. Massachusetts was substituted for a Doe defendant. In *Wennerholm* v. *Stanford University School of Medicine* (our fn. 3) the original complaint, in its relation to the defendant manufacturer of a drug, alleged that said manufacturer had negligently failed to disclose that a drug prescribed for obesity was dangerous. In the amended complaint it was alleged that advertisement of the drug in medical journals, etc., was fraudulent.

We approach application of the rule just enumerated to the facts of the case before us with two policies of the law in mind. One must be weighed against the other. Statutes of limitation are statutes of repose. They prevent the assertion of stale claims. Properly applied they are meritorious defenses. They "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." (1 Witkin, Cal. Procedure (1954) Actions, § 89, pp. 593-594.) The countervailing policy is alluded to in *Austin* v. *Massachusetts Bonding & Ins. Co., supra,* 56 Cal.2d 596, at page 603. It is the policy that the law favors the decision of cases on their merits.

In the case before us in the original complaint there is an allegation of negligence and injury as the proximate result of

---

*Medicine* (1942) 20 Cal.2d 713, 717-718 [128 P.2d 522, 141 A.L.R. 1358], stated the modern rule as established law. It was adopted in the Federal Rules of Civil Procedure, which in subdivision (c) of rule 15 provides: "Whenever the claim or defense asserted in the amended pleading *arose out of the conduct, transaction, or occurrence* set forth or *attempted to be set forth* in the original pleading, *the amendment relates back to the date of the original pleading.*" (Italics ours.) Notwithstanding the clear exposition of the change of rule in *Austin,* the phrases "new cause of action" and "entirely new cause of action" continue to crop up as being the decisive criteria on the question of relation back. (E.g., see dictum in *Simons* v. *County of Kern* (1965) 234 Cal.App.2d 362 [44 Cal.Rptr. 338], and in *Wood* v. *Deluca* (1963) 211 Cal.App.2d 507 [27 Cal.Rptr. 388].)

that negligence against *all* of the Doe defendants. True, at the outset plaintiff did not appear to know precisely in what manner the defendants other than the Fund were responsible because he alleged the Does were ''negligently responsible *in some manner*'' for the ''events and happenings'' which caused injury. (Italics added.) One such event was described in the original complaint. It was there alleged that the forklift ''became dangerous and defective.'' In contrast, the amended complaint (although repeating that phrase) pleaded a more serious tortious wrong, an act which, as we later hold, amounted at least to serious and wilful misconduct.

Gamsby, invoking the statute of limitations, unsuccessfully demurred to the amended complaint. On appeal he argues that the amendment alleged a *statutory* cause of action entirely different from the allegations of negligence contained in the original complaint. From this Gamsby contends that the amended complaint showed on its face that it was barred by limitations, that one may not state a statutory cause of action as an amendment to an action for negligence. Regardless of Gamsby's conclusion his premise fails. Labor Code section 3601, subdivision (a)(3), did not create a statutory cause of action. It preserved an employee's common law right to recover against a fellow employee for acts evincing a reckless disregard of the plaintiff's safety. (*Lowman* v. *Stafford* (1964) 226 Cal.App.2d 31, 39 [37 Cal.Rptr. 681] (hearing denied).) (See our fn. 2.)

We compare the change from negligence to the type of wilful misconduct pleaded in the case before us with the change from defalcations by brokers to an action on the faithful performance bond in *Austin,* with the change from negligence to fraud in *Wennerholm,* and with the change from negligence to wilful misconduct in both *Esrey* v. *Southern Pac. Co.* (1894) 103 Cal. 541, 546 [37 P. 500], and *Saari* v. *Superior Court* (1960) 178 Cal.App.2d 175 [2 Cal.Rptr. 856].

We hold that the recovery sought in both pleadings was on the same general set of facts and that the amended pleading related back to the original complaint under the cases cited.

The rule of relation back, as we have discussed it thus far in this opinion, has been considered in its aspect of application to defendants truly named in the original complaint (although the *Austin* case, like this case, involved a Doe defendant substitution). We now proceed to the next question.

#### DOES THE FACT THAT NO CAUSE OF ACTION WAS STATED AGAINST GAMSBY IN THE ORIGINAL COMPLAINT CHANGE THE RULE?

Gamsby was secretary-treasurer and in full charge of the operations at the lumber yard. That, for some purposes, would classify him as a part of management, not as an employee. But as we have seen (fn. 2 above), under the workmen's compensation provisions of the Labor Code relating to this type of action he must be regarded as a fellow employee. As such he is not liable in a superior court action for mere negligence which contributes to a work-induced injury. (See Lab. Code, § 3601, subd. (a).)[4] Therefore, Gamsby, who was acting within the scope of his employment, whether sued as a Doe or under his true name, was not liable under the negligence cause of action pleaded in the original complaint. Did this make any difference?

In *Austin* v. *Massachusetts Bonding & Ins. Co., supra,* 56 Cal.2d 596, no cause of action was stated in the original complaint against "Massachusetts" as a surety. The sole claim of liability was premised upon the wrongful act of the brokers and agents. Yet the Supreme Court held that the bonding company could be served as a Doe, named and brought in under the amended complaint. We note the following quoted from *Austin* at page 602 of 56 Cal.2d: "A defendant unaware of the suit against him by a fictitious name is in no worse position if, in addition to substituting his true name, the amendment makes other changes in the allegations on the basis of the same general set of facts."

We hold that the fact that a cause of action legally cognizable was not stated originally against Gamsby was not determinative of the question of the plaintiff's right to bring him in later, substituted for a Doe defendant. Under the authority of *Austin* it was the fact that a general statement of facts had been originally set forth under which a legal liability and obligation *could have been alleged had it been known* that justified the substitution.

---

[4]Although it is *not* involved in the case at bench, compare Labor Code section 3852 which expressly reserves to injured workmen their common law action for torts committed by persons other than the employer. Under that section an action may be maintained against a fellow employee *who is not acting within the scope of his employment* when the tort is committed. Labor Code section 3601 does not prohibit such an action. (*Saala* v. *McFarland* (1965) 63 Cal.2d 124 [45 Cal.Rptr. 144, 403 P.2d 400].)

**174**

Does the Fact That Plaintiff Knew Gamsby and Might
Have Ascertained Earlier His (Now) Alleged
Wilful Misconduct Preclude Use of the
Fictitious Name Statute?

Plaintiff was acquainted with Gamsby before the accident.
Code of Civil Procedure section 474 states that it applies
when "the plaintiff is ignorant of the name of a defendant."
That phrase has not been interpreted literally. ■ Even
though a plaintiff knows the true name of a person he is still
"ignorant of his name" if he lacks knowledge of facts giving
him a cause of action against that person. *Garrett* v. *Crown
Coach Corp.* (1968) 259 Cal.App.2d 647 [66 Cal.Rptr. 590]
(hearing denied) is in point. There the action involved injur-
ies to plaintiff in a school bus accident. The original com-
plaint was against named and Doe defendants. It charged all
defendants with the "unlawful and imprudent operation" of
the school bus. The allegations against the Does also stated, as
here, that they were "negligently responsible in some manner
for the events and the happenings herein referred to." The
trade name of the bus manufacturer ("Crown") was recited.
After the one-year period of limitations an amended com-
plaint was filed. Crown Coach Corporation was substituted
for Doe I. It was alleged that the manufacturer had negli-
gently designed and manufactured the bus. Grounds for the
claim of the bar of limitations by Crown Coach were that the
plaintiff was seeking to hold it on a theory not spelled out in
the original complaint. The trial court sustained the demur-
rer. It was reversed on appeal. The opinion relies upon the
*Austin* case as controlling authority. It is pointed out therein
that the change in theory of the *Austin* case was no more
drastic than the change in the case before the court in *Gar-*
■ ■ We find the change here no more drastic than
the change in *Garrett*. There the court further held that the
fact that plaintiff had the means of ascertaining these facts
earlier was not a bar to the application of section 474. The
opinion cited (on p. 650 of 259 Cal.App.2d) *Irving* v. *Car-
pentier* (1886) 70 Cal. 23 [11 P. 391]. (See also *Mishalow* v.
*Horwald* (1964) 231 Cal.App.2d 517 [41 Cal.Rptr. 895]
(hearing denied).) In *Mishalow* there was a substitution of
an anesthesiologist for a Doe defendant when the original
complaint had named only the operating and treating doctors
in an action for wrongful death. It is stated on page 524 of
231 Cal.App.2d, "ignorance of the facts is the critical issue,

and whether it be due to misfortune or negligence is not relevant.''[5]

Respondent cites *Lipman* v. *Rice* (1963) 213 Cal.App.2d 474 [28 Cal.Rptr. 800] (hearing denied) (the case which was the aftermath of *Lipman* v. *Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465]). *Lipman* v. *Rice* is distinguishable. There Montie Rice was sought to be brought into the case as a Doe charged with slanderous conduct; however, not only was her name known when the original complaint was filed but also both her name and *her slanderous activities as part of a conspiracy were alleged therein.* Which brings us to the crucial question here:

## WAS THERE SUBSTANTIAL EVIDENCE THAT PLAINTIFF WAS AWARE OF GAMSBY'S ALLEGED WILFUL MISCONDUCT WHEN THE ORIGINAL COMPLAINT WAS FILED?

Before the accident (May 23, 1961) plaintiff had known Gambsy. They had gone hunting together. He thought then that Gamsby was Arcata's bookkeeper and office manager. At that time Byron Boyce was the yard superintendent. It was Boyce who had hired plaintiff. On the night of the accident plaintiff, while sitting on the forklift, talked to Gamsby. In their conversation plaintiff referred to the forklift as a ''hunk of junk.'' The record does not indicate that plaintiff described to Gamsby then *why* he considered the forklift defective. In his testimony he said the brakes would not hold unless the emergency brake was pulled on; also there was something wrong with the hydraulic system.

The canopy was off on the day of the accident and plaintiff had been operating it that way for some time. Plaintiff had used the forklift principally for ''cleanup and one thing and another like this.''

Sometime between the happening of the accident and the taking of Gamsby's deposition in the workmen's compensation proceeding on September 11, 1961, plaintiff and his attorneys learned that Gamsby was Arcata's chief operational officer, general manager and secretary-treasurer. In giving that deposition Gamsby had testified that ''we had to remove

---

[5]We do not follow dicta to the contrary in *Schroeter* v. *Lowers* (1968) 260 Cal.App.2d 695, 701 [67 Cal.Rptr. 270], and in *Herschfelt* v. *Knowles-Raymond Granite Co.* (1955) 130 Cal.App.2d 347, 357 [279 P.2d 104]. That dicta is opposed to *Hoffman* v. *Keeton* (1901) 132 Cal. 195, and to *Irving* v. *Carpentier, supra,* 70 Cal. 23 (cited with approval in *Austin* v. *Massachusetts Bonding & Ins. Co., supra,* 56 Cal.2d 596.)

the guard'' a few months before the accident and the forklift had been used after that.

After the deposition, and on the same day that it was taken, plaintiff's then attorney and the attorney representing Gamsby had a conversation. It related to the possible liability of Gamsby under Labor Code section 3601, subdivision (a)(3). The attorneys realized that the section had been enacted in 1959 and that it had not been judicially construed. The two attorneys were of different opinions as to the degree of culpable intent required to impose liability under that section. Plaintiff's counsel expressed the thought that plaintiff's burden in that regard would be more severe than did Gamsby's attorney. During the course of the conversation plaintiff's attorney stated neither he nor plaintiff wanted to sue Gamsby. It was stated then and later that they intended to proceed against the Fund only.

In 1964 Gamsby's deposition was taken in this action. This was long after the amended complaint was filed (on December 18, 1963). At that deposition he testified, referring to the period before the accident: ''I asked Mr. Boyce why the canopy wasn't back on the machine. He said that the men still weren't satisfied with the canopy as it was fabricated. . . . [W]e discussed . . . that the best way to put a canopy on would be to make it . . . all part of the frame. As I remember, we had some other things, hydraulic problems and so on, and in the meantime I felt that we could use the machine, so I told Mr. Boyce to use it, you know, *as a light duty type machine,* such as what we brought it over for in the first place. . . .'' (Italics added.)

■ A plaintiff may not legally use and rely upon Code of Civil Procedure section 474 in bad faith. Plaintiff's ''ignorance'' of the true names of fictitious defendants (as ''ignorance'' has, as we have shown, been judicially interpreted) must be real and not feigned. (*Lipman* v. *Rice, supra,* 213 Cal.App.2d 474, 475; *Herschfelt* v. *Knowles-Raymond Granite Co., supra,* 130 Cal.App.2d 347.)

The question of whether plaintiff acted in good faith in his use of Code of Civil Procedure section 474 rests primarily with the trial court. (*Day* v. *Western Loan & Bldg. Co.* (1940) 42 Cal.App.2d 226, 236 [108 P.2d 702].) Our appellate inquiry begins and ends with a determination whether substantial evidence exists to warrant the trial court's finding. (See *Agnew* v. *Cameron* (1967) 247 Cal.App.2d 619, 622 [55 Cal.Rptr. 733].)

The evidence in this record, however, is virtually un-contradicted. As we view it, it does not support an inference that either plaintiff or his attorneys had known before May 9, 1962 (the date the original complaint was filed) that Gamsby had *ordered* the forklift to be used without a protective guard. The evidence did reasonably indicate that they then knew he had permitted it to be used without a guard but (according to both plaintiff and Gamsby) only ''for light duty work.'' The significance of that knowledge must be tested in the context of Labor Code section 3601, subdivision (a)(3).

This is a case of first impression. No reported opinion has defined the nature of ''an act . . . which evinces a reckless disregard for the safety of the employee injured, and a cal-culated and conscious willingness to permit injury . . . to such employee.'' (Lab. Code, § 3601, subd. (a)(3).) Guide-lines exist, however, in previous judicial definitions of the phrase ''serious and willful misconduct,'' as those words are used in Labor Code section 4553, providing an increased com-pensation award against an employer (personally or vicar-iously) for such misconduct.[6] Under section 4553 ''[i]t has been held repeatedly that the employment of workmen under dangerous conditions that can be guarded against constitutes a reckless disregard for their safety.'' (*Parkhurst* v. *Indus-trial Acc. Com.* (1942) 20 Cal.2d 826, 829 [129 P.2d 113], and cases cited therein.)[7]

Assuming *arguendo*[8] that plaintiff's early knowledge that

---

[6]It should be noted that the portion of Labor Code section 3601 under discussion (subd. (a)(3)) which applies only upon establishing ''a reck-less disregard for the safety of'' the injured employee and ''a calculated and conscious willingness to permit injury,'' etc., is immediately fol-lowed by subdivision (b). The latter provides that ''An act which will not sustain an independent action for damages against such other em-ployee under subsections . . . (3) of subdivision (a) . . . may never-theless be the basis of a finding of serious and willful misconduct under Section 4553. . . .'' That language indicates a legislative intent that ''a calculated and conscious willingness to permit injury'' be deemed to be conduct at least as blameworthy as ''serious and willful misconduct.''

[7]We cite *Parkhurst* v. *Industrial Acc. Com.* only for this one proposi-tion. In other respects it no longer is authoritative.

[8]We only assume this *arguendo*. There is no evidence as to the type of work the forklift was being used for at the time of the accident. After the canopy or guard had been removed Gamsby had only given permis-sion (under the record now before us) that it be used ''as a light duty type machine, such as what we brought it over for in the first place.'' Plaintiff had testified he had used it principally for ''cleanup and one thing and another like this.'' There is no evidence of plaintiff's knowl-edge of a use even *permitted* by Gamsby which could be classified as reck-lessness on Gamsby's part.

Gamsby was Arcata's general manager, that he had seen plaintiff operating the unprotected forklift and that he had permitted him to continue to do so was knowledge of acts in "reckless disregard for the safety" of plaintiff, such knowledge was not of conduct serious enough to constitute liability under either Labor Code section 4553 or Labor Code section 3601, subdivision (a)(3).

Applicability of subdivision (a)(3) demands more than a reckless disregard of plaintiff's safety. It requires a "calculated and conscious willingness" on Gamsby's part to permit injury to plaintiff. As stated, such willingness at the very least (see fn. 6) equates with the "willful misconduct" required by section 4553. To show such wilfulness, "[a] 'reckless disregard' of the safety of employees is not sufficient in itself unless the evidence shows that the disregard was more culpable than a careless or even a grossly careless omission or act. It must be an *affirmative and knowing disregard* of the consequences." (Italics added.) (*Hawaiian Pineapple Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 656, 663 [255 P.2d 431].) That case also states (on p. 662) : "While gross negligence may involve an intent to perform the act of omission, wilful misconduct involves the further intent that the performance be harmful *or that it be done with a positive, active and absolute disregard of the consequences.*" (Italics added.) The standard requires that the party to be charged must have in fact "put his mind" to the danger of probable injury to the employee and that he nevertheless deliberately failed to take precautions to avert it. (*Id.* at p. 663; see also *Rogers Materials Co.* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 717, 721-723 [48 Cal.Rptr. 129, 408 P.2d 737].) There was no evidence of any facts known to plaintiff or his attorneys before May 9, 1962, from which they might justifiably have inferred that Gamsby had such a state of mind. Since plaintiff lacked any knowledge of such a state of mind, it cannot be said that plaintiff feigned ignorance of facts giving him a cause of action under Labor Code section 3601, subdivision (a)(3), or that the later substitution of Gamsby for a fictitiously named defendant was in bad faith.

Gamsby makes a two-pronged argument. He argues first that a pleader need not possess, when he pleads, all of the facts necessary to *prove* a cause of action and therefore plaintiff should be held guilty of bad faith for a failure to plead in his first complaint "a calculated and conscious willingness" by Gamsby to injure plaintiff. He then contends that, since

the court found (and testimonial evidence supports that finding) plaintiff had learned no new facts between the date of the original complaint and the date of the first amended complaint, plaintiff must be assumed to have known when the original complaint was filed more than he now admits. We ignore the inconsistency of the two postulations. Neither can be sustained. We have outlined in detail what the evidence shows plaintiff knew when the original complaint was filed. Without doubt that information was inadequate to establish a calculated and conscious willingness by Gamsby to injure plaintiff. That the information then possessed may have been sufficient to have prompted an imaginative attorney to *plead* a cause of action under section 3601, subdivision (a)(3), is beside the mark. Bad faith cannot be charged because a less creative attorney did not do that which an attorney later employed elected to do. It is a non sequitur to argue that because nothing more was learned between the dates of the two complaints, plaintiff must be assumed to have known more when he first pleaded than he now admits. The fact of the amendment in this case (as in *Austin* v. *Massachusetts Bonding & Ins. Co., supra*) merely indicates the subsequent pleader's broader comprehension of persons possibly liable under the same general set of facts. No evidence was produced to prove or from which any reasonable inference could be drawn that plaintiff was aware earlier of facts not pleaded and not disclosed. Gamsby had the burden of proving such awareness if it existed.

We hold the action was not barred by limitations.

Since the foregoing disposes of the matter and requires reversal, we need not discuss other contentions raised by plaintiff on this appeal.

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

Friedman, J., and Regan, J., concurred.

A petition for a rehearing was denied November 27, 1968, and respondent's petition for a hearing by the Supreme Court was denied December 30, 1968.