[No. B134916. Second Dist., Div. Three. Nov. 17, 2000.]

ANNIE FULLER, Plaintiff and Appellant, v.
JAMES TUCKER, Defendant and Respondent.

**COUNSEL**

Stanton T. Mathews & Associates, Paul W. Ralph and Carrie S. McLain for Plaintiff and Appellant.

Ralph Helton & Associates and Ralph G. Helton for Defendant and Respondent.

---

**OPINION**

**ALDRICH, J.—**

INTRODUCTION

The trial court concluded plaintiff and appellant Annie Fuller (Fuller) did not properly amend her complaint to substitute in defendant and respondent Dr. James Tucker (Dr. Tucker) as a Doe defendant, pursuant to Code of Civil Procedure section 474. We reverse. The trial court used the wrong legal standard in addressing the issue, and some of its factual findings are either not supported by the evidence or are irrelevant.

FACTUAL AND PROCEDURAL BACKGROUND[1]

1. *Preliminary facts.*

On November 13, 1995, Fuller was admitted to Long Beach Memorial Hospital for bladder lift surgery. It appears the surgery corrected the bladder problems. However, during surgery Fuller sustained a significant nerve injury, which eventually paralyzed her right lower extremity. According to Fuller, "[w]hat caused the damage was the operation."

Dr. Tucker was the anesthesiologist who administered an anesthetic during the surgery. Prior to surgery, no one discussed the risks and complications of the anesthesia as articulated in the anesthesia consent form signed by Fuller. Dr. Tucker's name does not appear on the form. Fuller, who is illiterate, did not attempt to read the form. Dr. Tucker's name appears in Fuller's medical records, including a preoperation anesthetic evaluation form. This form also shows that the day after surgery Dr. Tucker evaluated Fuller's problem with regard to her lower extremity weakness.

Immediately after surgery, Fuller noticed extreme weakness in her right leg. A neurologist opined that the paralysis had been caused by nerve

---

[1]Since the matter comes to us after a trial on the issue, we view the facts in the light most favorable to the judgment. However, all facts must be supported by the evidence submitted to the trial court. Evidence does not include argument of counsel. (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 454 [60 Cal.Rptr.2d 641]; *Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1090 [223 Cal.Rptr. 410].)

Further, we have not adopted any factual statement made by the parties in their briefs that was unaccompanied by a citation to the evidentiary record. (*Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003 & 1003-1004, fn. 2 [87 Cal.Rptr.2d 90].)

damage. On November 16, 1995, Fuller consulted a second neurologist who thought the weakness might be attributed to right sciatic nerve palsy. The neurologist did not tell Fuller what caused the nerve injury. The neurologist opined that the paralysis had been caused by nerve stretch injury. In December 1995, Fuller underwent an electromyogram which showed "markedly abnormal" results, "demonstrating evidence of diffuse denervation in virtually all muscles tested in the right lower extremity compatible with a right lumbosacral plexopathy." In December 1995, a lumbosacral MRI scan did not clearly identify the problem. The MRI report showed a cystic lesion on the conus, which could represent a tumor. Multiple physicians could not specifically diagnose why Fuller could not walk.[2]

Fuller filed a medical malpractice complaint, which was subsequently amended by a first amended complaint. The first amended complaint alleges, among other things, that defendants were negligent by "improperly injecting plaintiff, by improperly positioning of plaintiff and/or improper injecting of plaintiff during the preparation for and during the actual surgery of plaintiff. . . ." The first amended complaint did not name nor refer to Dr. Tucker.

After the statute of limitations expired, Fuller filed a Doe amendment naming Dr. Tucker as Doe II pursuant to Code of Civil Procedure section 474.

Dr. Tucker answered and alleged as an affirmative defense that Fuller was barred by the medical malpractice statute of limitations (Code Civ. Proc., § 340.5).

After all other defendants were dismissed, Dr. Tucker sought a separate trial on the issue of whether the statute of limitations barred Fuller from bringing the case against him. (Code Civ. Proc., § 597.5.) The motion was granted and both parties waived their right to jury.

2. *The bifurcated proceedings.*

Dr. Tucker submitted a brief on the statute of limitations issue contending he had not been timely brought into the lawsuit because the Doe amendment was improper. Dr. Tucker argued that at the time Fuller filed the initial complaint, Fuller was not ignorant of his identity or of the facts giving rise to her malpractice claim against him. Dr. Tucker did *not* submit any declarations or other evidence in support of his arguments.

In Fuller's responsive papers, she argued that at the time she filed her initial complaint, she had not known that she had been injured by the

[2]For example, according to Fuller, Dr. Hancock told her "he don't know what happened."

anesthetic shot administered by Dr. Tucker during surgery, nor had she been aware of the fact that Dr. Tucker was the anesthesiologist. She stated that a number of doctors had been consulted after the operation, and that none suggested her paralysis was caused by the anesthetic or by the services rendered by Dr. Tucker. She believed she had been injured by the "operation." To support these claims, Fuller presented medical reports and excerpts from her deposition testimony.

Dr. Tucker replied by repeating his previously presented arguments. Although his papers referenced exhibits, no exhibits were attached to Dr. Tucker's reply brief. Further, Dr. Tucker did *not* submit any declarations or other evidence to support his factual claims.

The matter was submitted on the moving papers. The trial court then heard argument. The trial court found that the evidence showed that Fuller had not timely filed her action against Dr. Tucker. The trial court based its decision on, and cited, *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103 [245 Cal.Rptr. 658, 751 P.2d 923] and *Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93 [132 Cal.Rptr. 657, 553 P.2d 1129]. The trial court reasoned that the statute of limitation accrues when the "reasonable person [has been put] on inquiry or has the opportunity to obtain knowledge from sources open to her investigation. [¶] [The] test is an objective one meaning that the information or circumstances known to the plaintiff as a reasonable person would have investigated the possibility that the plaintiff's injuries were caused by the defendants or any of them."

The trial court found the following facts, which it asserted showed that the Doe amendment was untimely: (1) Fuller signed the consent form for the anesthetic and thus knew that an anesthesiologist would play a significant part in her medical procedure; (2) Fuller heard Dr. Tucker's name sometime during surgery; (3) Fuller received an injection from an anesthesiologist and immediately experienced the onset of pain, which may have resulted in injury to her right side; (4) Dr. Tucker's name appears unambiguously in Fuller's medical and surgical reports; (5) Fuller is charged with "the direct knowledge, not the imputed knowledge as it would have been if her estate were involved or a personal representative as in a wrongful death matter"; and (6) Fuller's records were readily available to her and her attorneys long before the statute of limitations ran.

Judgment was entered in favor of Dr. Tucker on May 17, 1999. Fuller filed a motion for new trial, contending the decision was against the law and the evidence was insufficient to justify the factual findings. Fuller argued that the trial court's factual determinations were based upon the unsupported claims of Dr. Tucker's attorney, rather than on evidence.

In opposition, Dr. Tucker argued the evidence presented by Fuller provided sufficient evidence to support the trial court's findings. Dr. Tucker also argued Fuller had "attributed her injury to Dr. Tucker's conduct on the day following the surgery." Dr. Tucker stated, based upon his deposition testimony, that he had had conversations with Fuller before and after the operation, and Fuller had authorized her attorneys to obtain her medical records. Dr. Tucker's moving papers cited to attached exhibits. However, no exhibits were attached to the opposition.

In Fuller's reply brief, she disagreed with the factual claims made by Dr. Tucker, including that Dr. Tucker had been identified in the medical records as the anesthesiologist. She also noted that while there was some "doctor's scrawl" on the records, which might identify Dr. Tucker, the records were far from clear.

Fuller's new trial motion was denied.

Fuller timely appeals from the judgment entered by the trial court and from the trial court's order denying the motion for new trial. We reverse.

### Discussion

*The trial court applied the incorrect legal standard and some factual findings are either unsupported by the evidence or are irrelevant.*

██ Fuller correctly contends that the trial court applied the wrong legal standard. Further, she has shown that some of the trial court's factual findings were unsupported by the evidence or were irrelevant.

The trial court's conclusion that Fuller's Doe amendment was untimely rests upon the trial court's interpretation of Code of Civil Procedure section 474 and the trial court's factual findings. ██ To the extent the trial court drew legal conclusions, we review the conclusions de novo. To the extent that the trial court made factual findings, we review them to determine if they are supported by substantial evidence. (*Balon v. Drost* (1993) 20 Cal.App.4th 483, 487 [25 Cal.Rptr.2d 12].)

1. *Code of Civil Procedure section 474 addresses when a Doe amendment may be brought into a lawsuit.*

Fuller timely filed her initial complaint. However, after the statue of limitations had expired, Fuller brought in Dr. Tucker as a Doe defendant. ██ In such situations, Code of Civil Procedure section 474 permits

plaintiffs to bring in defendants if the requirements of section 474 are met. If so, that defendant is considered a party to the action from its commencement. (*Munoz v. Purdy* (1979) 91 Cal.App.3d 942, 946 [154 Cal.Rptr. 472].)

Code of Civil Procedure section 474, the fictitious name statute, states in part: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated in any pleading or proceeding by name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . . ."

Code of Civil Procedure section 474 is to be liberally construed. (*General Motors Corp. v. Superior Court* (1996) 48 Cal.App.4th 580, 593 & 593-594, fn. 12 [55 Cal.Rptr.2d 871].) "[T]he relevant inquiry when the plaintiff seeks to substitute a real defendant for one sued fictitiously is *what facts the plaintiff actually knew* at the time the original complaint was filed." (*Id.* at p. 588.) "It is when [plaintiff] is actually ignorant of a certain fact, not when [plaintiff] might by the use of reasonable diligence have discovered it. Whether [plaintiff's] ignorance is from misfortune or negligence, [plaintiff] is alike ignorant, and this is all the statute requires." (*Irving v. Carpentier* (1886) 70 Cal. 23, 26 [11 P. 391].)

The phrase "ignorant of the name of a defendant" is broadly interpreted to mean not only ignorant of the defendant's identity, but also ignorant of the facts giving rise to a cause of action against that defendant. "[E]ven though the plaintiff knows of the existence of the defendant sued by a fictitious name, and even though the plaintiff knows the defendant's actual identity (that is, his name) the plaintiff is 'ignorant' within the meaning of the statute if [plaintiff] lacks knowledge of that person's connection with the case or with [plaintiff's] injuries. [Citations.] The fact that the plaintiff had the means to obtain knowledge is irrelevant. [Citation.]" (*General Motors Corp. v. Superior Court, supra,* 48 Cal.App.4th at pp. 593-594, fn. omitted.)

*2. The rationale of Jolly and Sanchez is used to discuss the accrual of a cause and not the timeliness of a Doe amendment.*

The trial court here applied the legal rationale of *Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d 1103 and *Sanchez v. South Hoover Hospital, supra,* 18 Cal.3d 93 when it held that Fuller's Doe amendment was untimely. Based upon these cases, the trial court concluded Fuller had the obligation to investigate the possibility of Dr. Tucker's involvement.

It was an infectious error to import the rationale of *Jolly* and *Sanchez* because these cases discuss the *accrual* of a cause of action, and a plaintiff's

obligation to reasonably investigate, inquiries which are *not* relevant to whether a Doe amendment is timely.

■ *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926 [30 Cal.Rptr.2d 440, 873 P.2d 613] explained the distinction between the accrual of a cause of action and the timeliness of a Doe amendment. *Bernson v. Browning-Ferris* explained as follows: "The statute of limitations usually commences when a cause of action 'accrues,' and it is generally said that 'an action accrues on the date of injury.' (*Jolly* v. *Eli Lilly & Co.* [, *supra*,] 44 Cal.3d 1103, 1109 . . . .) Alternatively, it is often stated that the statute commences 'upon the occurrence of the last element essential to the cause of action.' [Citations.] These general principles have been significantly modified by the common law 'discovery rule,' which provides that the accrual date may be 'delayed until the plaintiff is aware of her injury and its negligent cause.' (*Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at p. 1109.) [¶] A close cousin of the discovery rule is the 'well accepted principle . . . of fraudulent concealment.' (*Sanchez* v. *South Hoover Hospital*[, *supra*,] 18 Cal.3d 93, 99 . . . .) 'It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it.' (*Ibid.*) . . . [¶] . . . . [¶] While ignorance of the existence of an injury or cause of action may delay the running of the statute of limitations until the date of discovery, the general rule in California has been that ignorance of the identity of the defendant is not essential to a claim and therefore will not toll the statute. ([Citation]; *Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at p. 1114.) As we have observed, 'the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.' (*Jolly* v. *Eli Lilly Co., supra,* 44 Cal.3d at p. 1110.) Aggrieved parties generally need not know the exact manner in which their injuries were 'effected, nor the identities of all parties who may have played a role therein.' [Citation.] [¶] Although never fully articulated, the rationale for distinguishing between ignorance of the wrongdoer and ignorance of the injury itself appears to be premised on the commonsense assumption that once the plaintiff is aware of the injury, the applicable limitations period (often effectively extended by the filing of a Doe complaint) normally affords sufficient opportunity to discover the identity of all the wrongdoers. As we explained in *Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d 1103 (rejecting the plaintiff's assertion that her ignorance of the particular manufacturer of the drug caused her injuries tolled the statute): '[P]laintiff could have filed a timely complaint under [Code of Civil Procedure] section 474, which allows suit to be filed against a Doe party. From the time such a complaint is filed,

the plaintiff has three years to identify and serve the defendant. [Citations.] Hence, in the instant case, plaintiff could have brought a timely Doe action, effectively enlarging the statute of limitations period for three years.' [Citation.] Because the plaintiff in *Jolly* was aware of some of the manufacturers, she could have utilized the normal procedure of filing suit against them, naming Doe defendants, and then taking discovery to identify the remainder. That, indeed, is the normal situation for which the fictitious name statute, Code of Civil Procedure section 474, is designed: when the plaintiff is ignorant of the name of '*a* defendant,' the plaintiff must file suit against the known wrongdoers, and, when the Doe's true name is discovered, the complaint may be amended accordingly. (Code Civ. Proc., § 474.)" (7 Cal.4th at pp. 931-933, fn. omitted.)

Thus, while the duty to investigate is considered in discussing whether an initial complaint is timely, that inquiry is not relevant to whether a Doe amendment is timely. (Code Civ. Proc., § 474.) "Although it is true that a plaintiff's ignorance of the defendant's name must be genuine (in good faith) and not feigned [citations] and that a plaintiff need not be aware of each and every detail concerning a person's involvement before the plaintiff loses his ignorance [citations], it is equally true that the plaintiff does not relinquish her rights under section 474 simply because she has a suspicion of wrongdoing arising from one or more facts she does know. [Citations.]" (*General Motors Corp. v. Superior Court, supra,* 48 Cal.App.4th at pp. 594-595.) Code of Civil Procedure "[s]ection 474 allows a plaintiff in good faith to delay suing particular persons as named defendants until [plaintiff] has knowledge of sufficient facts to cause a reasonable person to believe liability is probable." (*Dieckmann v. Superior Court* (1985) 175 Cal.App.3d 345, 363 [220 Cal.Rptr. 602].) "[S]ection 474 does not impose upon the plaintiff a duty to go in search of facts she does not actually have at the time she files her original pleading. [Citation.]" (*General Motors Corp. v. Superior Court, supra,* at p. 596 and fn. 15, and cases cited therein, fn. omitted.)

3. *We now apply the law to Fuller's case.*

Here, in deciding if Fuller's Doe amendment naming Dr. Tucker was timely, the trial court relied upon *Sanchez* and *Jolly.* Using the rationale from these cases, the trial court reasoned that Fuller was obligated to make a reasonable investigation to discover Dr. Tucker's identity and to determine the connection between Dr. Tucker (the wrongdoer) and Fuller's injuries. However, as shown, the foundation for the trial court's decision was faulty. The only relevant inquiry was whether Fuller knew of Dr. Tucker's identity and the facts giving rise to a cause of action against him.

Further, there is no evidence to support all of the trial court's factual findings. The trial court concluded that sometime during surgery, Fuller

heard Dr. Tucker's name. We have not found any evidence in the record supporting this finding. In Dr. Tucker's moving papers, he stated that Fuller had "testified that she remembered being awake in the surgical suite and that someone told Dr. Tucker to 'hit' her. She testified that she then recalled having a severe pain, the worst pain in her life, running down her right leg and up into her head." However, absolutely no evidence was submitted to support this factual claim made by Dr. Tucker's counsel.[3] Argument of counsel is not evidence. (*Davenport v. Blue Cross of California, supra,* 52 Cal.App.4th at p. 454; *Estate of Nicholas, supra,* 177 Cal.App.3d at p. 1090.)

The trial court also found that Dr. Tucker's name appears unambiguously in Fuller's medical and surgical reports.[4] However, there was no evidence that Fuller had these records. The trial court additionally found that Fuller's records were readily available to Fuller and her attorneys prior to the expiration of the statute of limitations. Since Fuller had no duty to investigate, this is irrelevant.

In order for Dr. Tucker to successfully argue that the Doe amendment was untimely, he had to prove that even if Fuller knew his identity, Fuller also knew facts giving rise to a cause of action against Dr. Tucker. Because the trial court mistakenly utilized the incorrect legal test, the trial court failed to specifically address this pivotal issue. Further, numerous facts suggest that Fuller was ignorant of the cause of her injuries and any connection to Dr. Tucker. (See, e.g., *Mishalow v. Horwald* (1964) 231 Cal.App.2d 517 [41 Cal.Rptr. 895] [Doe amendment timely against anesthesiologist even though plaintiffs knew anesthesiologist's identity as plaintiffs were ignorant of facts giving rise to cause of action against him and did not know he had been negligent].)

To summarize, the trial court applied an erroneous legal standard and made incomplete and erroneous factual findings. These errors are prejudicial, requiring reversal. It is reasonably probable that in the absence of these errors, a result more favorable to Fuller would result.

[3]The trial court also found that when Fuller received an injection from an anesthesiologist, Fuller immediately experienced pain. The only evidence we have found in the record relating to Fuller experiencing pain during surgery is the illegible notes in a medical record. The note may say "needle pain." However, these are only two words in an otherwise indecipherable note. Additionally, there is no evidence that Fuller knew it was Dr. Tucker who administered the shot during surgery. Even if Fuller knew an anesthesiologist would, as the trial court concluded, "play a significant part in her medical procedure," this did not necessarily show that Fuller knew it was Dr. Tucker who administered the shot or that the shot was the cause of her injuries.

Additionally, while Fuller's attorney at argument before the trial court admitted that Fuller experienced pain by the injection, counsel also stated that the pain went away when she awoke.

[4]Even if we disagreed with this factual conclusion, we have accepted it as we must indulge all factual findings in favor of the findings.

## DISPOSITION

The judgment must be reversed. Costs on appeal awarded to appellant.

Croskey, Acting P. J., and Kitching, J., concurred.