134 F.3d 377
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FARA ESTATES HOMEOWNERS ASSOCIATION, a California non-profit
corporation, individually and in its
representative capacity, Plaintiff-Appellant,
v.
FARA ESTATES, LTD., a limited partnership; Modesto
Development, a general partnership; Modesto Development, a
California corporation; Fara Associates, a general
partnership; Crocker National Bank, Wells Fargo Bank, a
national banking association; Sam Randy; Joseph Randy;
Rendazzo Development; Headrick Brothers; Durabuilt Truss
Co.; Panel Clip Company; All American Lath and Plastering;
Diversified Enterprises; Sacramento Insulation; Monier
Company; Olmstead Electric Company, Inc.; Golden West
Sales, Inc.; Merced Plumbing Supply; Larry Lentlers,
Pacific Industries; Smith Lumber; Overhead Door Company of
Stockton; Modesto Shower Door; Johnson Ray Company; The
Drapery Specialist; Paul and Ray's Counter Tops; Pacific
Industries; Centaur Manufacturing, Inc.; Tobert Hart
Architect; Ard Valley Engineering; Mark Randy; Sam
Arnold; J. Andrew Krake, Betty Meadows; John R. Christian;
J. Andrew Krake; John Christianson; Jack Mills; Dorthy
Bearden; Springbrook Development Company; Steve C.
Mothersell; Saratoga Savings; Dwayne Stewart; George V.
Hartman; Ball Electric, Inc.; Joseph Ciarolla, d/b/a
Ciarolla Construction; Gutter Specialties; Grover
Landscaping, Inc.; Fresno Distributing Company, Inc.;
Amfac Distribution Corporation CBR Cement Corporation,
Defendants-Appellees.
 No. 96-17338.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1997.
Decided Jan. 9, 1998.
 
 1
 Before: GOODWIN, and T.G. NELSON, Circuit Judges, and RHOADES, District Judge**.
 
 
 2
 MEMORANDUM*
 
 
 3
 Plaintiff Fara Estates Homeowners Association ("the Association") appeals a summary judgment in favor of the defendant, Saratoga Savings and Loan Association ("Saratoga") in an action brought on the theory of lender liability under California law. We vacate and remand.
 
 
 4
 The principal issue is whether Saratoga was subject to liability as a defendant sued under California Code of Civil Procedure § 474's "doe" pleading practice. This question in turn depends upon whether the plaintiff knew of its causes of action against Saratoga for the purposes of § 474 at the time the Association filed its original complaint. If the answer to these questions is not clear from the record before the district court at the time of its ruling, then there is the specific issue on this summary judgment: which party had the burden to show that a genuine issue of material fact exists regarding plaintiff's alleged ignorance of its causes of action against Saratoga at the time the original complaint was filed?
 
 
 5
 The Association also contends that the "rule of discovery" protects its right to sue because its causes of action against Saratoga did not accrue until they were discovered by the Association, and the question of when the Association "discovered" or reasonably should have discovered its causes of action is a genuine issue of material fact that cannot be disposed of by a summary judgment.
 
 
 6
 Finally, the Association contends that its Federal Rule of Civil Procedure 60(b) motion should have been granted, thereby allowing it to submit further evidence regarding the knowledge of individual members of the Association's board of directors of causes of action against Saratoga, in support of its opposition to Saratoga's motion for summary judgment.
 
 FACTS AND PROCEDURAL BACKGROUND
 
 7
 This litigation grew out of the development and financing of a 93-unit condominium project in Modesto, California ("the Fara project"). The project was developed by Sam and Joseph Randy, who secured construction financing from Crocker National Bank (later merging with Wells Fargo Bank, collectively "the Bank"). The Bank began to experience problems with the developer and refused to provide further funding for the project.
 
 
 8
 Following the refusal of further funding, in January, 1985, the developer applied to Saratoga Savings and Loan ("Saratoga") for a loan to complete the project. The owner of Saratoga, Jesse Rodriguez, arranged the loan, and the developer apparently used the proceeds of the loan to pay off other debts in which Rodriguez had an interest. In any event, the Fara project was completed in phases from May, 1982, through August, 1985, and by 1991 a number of unhappy homeowners, claiming a variety of defects in the construction of their units, sued the developers, the contractors, and the Bank. The Association became the nominal plaintiff and the complaint contained language pursuant to California "doe" pleading procedures, designed to permit the later naming of any additional defendants that might be discovered later.
 
 
 9
 To secure its loan, Saratoga had taken a deed of trust for 41 units, which it ended up acquiring in foreclosure in October, 1987. As owner of these units, Saratoga placed three representatives on the board of directors of the Association. Saratoga sold its units in 1988 and 1989. The last of Saratoga's representatives left the Association's board of directors in November, 1989.
 
 
 10
 Two years and one month later, on December 31, 1991, the Association filed its complaint in state court, naming the Bank as one of the defendants. On December 16, 1993, the Association filed an Amendment to the Complaint to substitute Saratoga in as "Doe 13." On July 14, 1995, Saratoga's receiver, the Resolution Trust Company, removed the action to federal court because of the RTC role as a federal agency. We will refer, however, to the defendant as Saratoga.
 
 
 11
 After Saratoga was granted its summary judgment, the Association filed an expedited motion for leave to file motions for reconsideration and for relief under Federal Rule of Civil Procedure 60(b). These motions were denied, judgment was entered, and the Association appealed.
 
 DISCUSSION
 
 12
 We must determine, viewing the evidence in the light most favorable to the Association, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995).
 
 
 13
 If we reach the denial of a motion for reconsideration, we review that ruling for an abuse of discretion. Fireman's Fund Ins. Co. v. Alaskan Pride Partnership, 106 F.3d 1465, 1470-71 (9th Cir.1997).
 
 
 14
 State law regarding fictitious-named defendants is applied to complaints originally filed in state court. Cabrales v. The County of Los Angeles, 864 F.2d 1454, 1463-1464 (9th Cir.1988), vacated on other grounds, 490 U.S. 1087 (1989), opinion reinstated by 886 F.2d 235, 236 (9th Cir.1989). California Code of Civil Procedure § 474 allows a plaintiff to designate as "doe" defendants those parties whose true identities are unknown at the time the complaint was filed.[1] There are three circumstances under which the "ignorance" requirement can be satisfied: 1) if the plaintiff is unaware of the defendant's identity, 2) if the plaintiff is unaware of the facts giving rise to its cause of action against the defendant, or 3) if the law does not recognize a cause of action until after the time to file the complaint has lapsed. Snoke v. Bolen, 1 Cal.Rptr.2d 492, 494 (Cal.App.1991).
 
 
 15
 The purpose of § 474 is to enable a plaintiff to bring an action before the claim is barred by the statute of limitations, and then later to bring in defendants when their identities or the claims against them are discovered. General Motors Corp. v. Superior Court (Jeffrey), 55 Cal.Rptr.2d 871, 879 (Cal.App.1996).
 
 
 16
 The Association contends first that the district court erred in ruling that Saratoga had met its initial burden as the moving party regarding whether the Association had properly named Saratoga as a "doe" defendant under § 474. Alternatively, the Association contends that, even if Saratoga met its initial burden as the moving party, the district court erred in ruling that the Association failed to meet its burden of showing that a genuine issue of material fact existed which could only be resolved at trial.
 
 1. Saratoga's Initial Burden
 
 17
 We are satisfied that there was no error in holding that Saratoga had met its initial burden. The district court relied on Celotex Corp. v. Catrett, 477 U.S. 317 (1986), to allocate the burden of proof in Saratoga's motion for summary judgment. Initially the moving party has the burden to establish that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. at 325. To do so, the moving party must "inform[ ] the district court of the basis for its motion, and identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323 (internal quotations omitted).
 
 
 18
 The Association contends that Saratoga, in its moving papers, failed to inform the district court that one of the bases for its motion was that the Association was not ignorant, at the time of filing its complaint, of the facts giving rise to its cause of action against Saratoga, inasmuch as Saratoga "focused exclusively" on the identity prong of the § 474 requirements, while the Association conceded knowledge of Saratoga's identity in its oppositional papers.
 
 
 19
 This argument conflates the issues before the trial court. Nobody seriously argued that the Association did not know the identity of Saratoga, three officers of which sat on the Association board. The issue is whether the Association knew, or should have known that it had a "lender's liability" claim against Saratoga prior to the date the Association filed its original complaint. To be more exact, the issue on summary judgment is whether a material question of facts existed concerning what the Association knew about its claim against Saratoga, if any, and when did it acquire that knowledge, or when should it have known it had a claim.
 
 
 20
 Numerous points in Saratoga's moving papers address whether the Association was unaware of the facts giving rise to its cause of action against Saratoga, thereby fulfilling the Celotex requirement that the moving party "point[ ] out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Id. at 325.
 
 
 21
 First, in setting forth the law regarding the circumstances under which a "doe" pleading can be made, Saratoga did include an ignorance "of the facts giving plaintiff a cause of action against that defendant." Saratoga asserted that "plaintiff knew everything it needed to know to name Saratoga in its original complaint." If the Association was aware of the facts establishing its cause of action against Saratoga, before it filed its complaint, then of course the claim was barred because there was no excuse for using the "doe" strategy to keep the statute of limitations open against Saratoga. Saratoga's strongest argument was circumstantial. It argued "it is now clear that all of the facts were known to plaintiff ... by virtue of the fact that all of these actions were taken officially by the plaintiff's board of directors," thus focusing the court's attention not just on the Association's awareness of Saratoga's identity, but also on the Association's awareness of particular actions taken by Saratoga.
 
 
 22
 Moreover, Saratoga, in its moving papers, cited case law dealing with the issue of a plaintiff's ignorance of the facts giving rise to a cause of action, such as Optical Surplus v. Superior Court (Niskar), 279 Cal.Rptr. 194, 198 (Cal.App.1991) Thus, Saratoga did meet its initial burden of pointing out to the district court the issue of whether the Association was ignorant of the facts giving rise to a cause of action against Saratoga at the time that it filed the original complaint.
 
 2. Burden of Showing Plaintiff Ignorance
 
 23
 The district court held that the Association "bears the burden of proof on its proper use of doe pleading under § 474." The court then found that the Association failed to meet its burden on summary judgment because it failed to introduce evidence of what it did or did not know at the time the original complaint was filed. While a pleader can hardly be expected to file an affidavit listing everything it did not know, the district court did need to know what the Association claimed was its first knowledge of a claim against its lender, Saratoga, prior the December, 1991 filing of its complaint saving claims against "does."
 
 
 24
 The district court appears to have been referring to the burden of proof at trial. The Association contends that the district court erred in its allocation of the burden of proof regarding the use of "doe" pleadings, arguing instead that this is a situation where the defendant has the burden of proof at trial, i.e., to show that the plaintiff was not ignorant for the purposes of § 474.
 
 
 25
 Allocation of the burden of proof at trial affects the determination of the moving party's burden on summary judgment. When the moving party has the burden of proof at trial, that party must carry its initial burden at summary judgment by presenting evidence affirmatively showing, for all essential elements of its case, that no reasonable jury could find for the non-moving party. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the non-moving party has the burden of proof at trial, the moving party can carry its initial burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden at trial. Celotex v. Catrett, 477 U.S. at 322-323.
 
 
 26
 Only after the moving party carries its initial burden does the burden shift to the non-moving party to demonstrate that there is a material issue of fact precluding summary judgment. The non-moving party must respond through affidavits or as otherwise provided in Fed.R.Civ.P. 56, by showing that a genuine issue of material fact exists "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 
 27
 The Association takes issue with the district court's allocation of the burden of proof at trial regarding the use of "doe" pleadings, and thus with its implicit finding that Saratoga met its initial burden as the moving party at summary judgment. According to the district court, the Association failed to meet its burden because it did not point to any evidence in the record other than its bald assertion that it did not discover its claims against Saratoga until after suit was filed.
 
 
 28
 The issue of the allocation of the burden of proving plaintiff ignorance has not been met squarely by the California courts. In most cases, each party has attempted to produce evidence favorable to its position, and thus the court has occupied itself with an assessment of that evidence. However, the case law which does touch on the burden of proof issue appears to allocate the burden to the defendant. Saratoga cites Parker v. Robert E. McKee, Inc., 4 Cal.Rptr.2d 347, 349-350 (Cal.App.1992), to support its contention that the Association bears the burden of proving its ignorance. The case is of little help. In Parker, the plaintiff offered an explanation to establish its ignorance at the time the complaint was filed. The defendant merely responded that such a showing was insufficient to establish ignorance. The appellate court ruled in favor of the plaintiff, but did not reveal why it did so. Id. at 351.
 
 
 29
 Meanwhile, Scherer v. Mark, 135 Cal.Rptr. 90 (Cal.App.1976), might tend to support Saratoga's argument. There, the court stated that "[i]t was the burden of plaintiff [, who sought to avoid the bar of the statute of limitations,] at least to explain what facts existed that tolled the statute." Id. at 95. However, it appears that this burden is met with a plaintiff's properly pleaded "doe" allegation in the original complaint along with plaintiff's subsequent amendment to the complaint stating the true identity of the defendant. Note that the holding in Scherer, that the plaintiff did not meet the statutory requirements of § 474 with reference to the defendant, is criticized as being inconsistent with previous decisions, in Hogan, "California's Unique Doe Defendant Practice: A Truth Stranger Than Fiction," 30 Stan.L.Rev., 51, 74-75 (1977).
 
 
 30
 Breceda v. Gamsby, 72 Cal.Rptr. 832 (Cal.App.1968), contains the most direct statement on the issue. After trial was held, the court ruled that the plaintiff could not take advantage of the "doe" pleading procedure and thus his action against defendant was barred by the statute of limitations. Id. at 835. On appeal, the appellate court held that it was the defendant who must supply evidence of plaintiff ignorance under § 474. Specifically, it found that no evidence had been produced to prove, or from which any reasonable inference could be drawn, that plaintiff was aware earlier of facts not pleaded and not disclosed, and asserted that the defendant "had the burden of proving such awareness if it existed." Id. at 841.
 
 
 31
 The language of other cases is not so direct, but the state courts appear to be operating on the assumption that the defendant carries the burden of showing plaintiff's ignorance, in holding for the plaintiff. Thus, in Barrows v. American Motors Corp., 192 Cal.Rptr. 380 (Cal.App.1983), where the appellate court treated the case as involving a motion for summary judgment by defendants, the court first noted that it was the defendants who were seeking to show that the plaintiff had actual knowledge of his claim against the defendant.[2] Id. at 381, 384. To do so, defendants submitted a questionnaire which had been answered by the plaintiff. Plaintiff made no evidentiary showing beyond his pleadings. In finding that the defendants did not make the required showing, the court held that the questionnaire did not establish that the plaintiff "had actual knowledge of the identity of all the defendants or the facts showing their involvement in the injuries to decedent." Id. at 384 (footnote omitted).
 
 
 32
 In General Motors Corp. v. Superior Court (Jeffrey), 55 Cal.Rptr.2d 871 (1996), decided some eight months after the district court's order granting Saratoga's motion for summary judgment was entered, the court focused only on the defendant's attempt to show that plaintiff had actual knowledge of her cause of action against the defendant prior to filing the complaint. The defendant's evidence of plaintiff's knowledge consisted of facts it argued were "commonly understood." The court rejected defendant's view that these facts were commonly understood, thus holding that knowledge of these facts cannot simply be imputed to the plaintiff. Id. at 882. Inasmuch as the defendant offered no other controverted proof of actual knowledge, it did submit evidence of a statement by the plaintiff tending to show actual knowledge of her cause of action against defendant. However, although the court assumed arguendo that plaintiff had made such a statement, it found that the statement amounted to nothing more than one of subjective belief and thus was immaterial. Id. at 875 n. 6. The appellate court thus refused to order the trial court to grant defendant's motion for summary judgment. Further hinting at its allocation of the burden of proof to the defendant, the court entitled the section of its opinion in which it set forth this reasoning "To Defeat A Claim of Ignorance, It Must Be Shown That The Plaintiff Had Actual Knowledge Of The Basic Facts." Id. at 880. Although use of the passive voice kept the court from directly stating that it was the defendant which had the burden of proof, stating the issue in terms of defeating the claim necessarily implies that the court believed that it was the defendant which was required to make the showing.
 
 
 33
 Finally, as the Association points out, meeting the burden of showing proper use of "doe" pleadings would place it in the difficult position of having to prove a negative. That is, the Association would have to show that it did not know particular facts at the time the original complaint was filed. On the other hand, if Saratoga were required to prove that the Association had knowledge of particular facts, this would probably be accomplished by resort to direct evidence, which should not be difficult to obtain in depositions.
 
 
 34
 Thus, in those cases where the court has given some consideration to the burden of proof requirements, either implicitly or explicitly, the burden has been placed on the defendant to show that the plaintiff had the requisite knowledge of facts for the purposes of § 474. Further supporting such an allocation is the fact that the alternative allocation would require the plaintiff to prove a negative, i.e., to prove that it lacked knowledge of certain facts. For the purposes of summary judgment, then, Saratoga, and not the Association, has the initial burden of presenting evidence affirmatively showing that no reasonable jury could find that the Association was ignorant of its cause of action against Saratoga.
 
 
 35
 3. Saratoga's Showing of Association Ignorance
 
 
 36
 As noted in Stephens v. Berry, 57 Cal.Rptr. 505, 507 (Cal.App.1967), "[t]here are not many instances in the law where absolute ignorance is vital and may serve to advance a litigant's cause, but section 474 contains one." For the purposes of § 474, a plaintiff is ignorant "if he lacks knowledge of [the defendant's] connection with the case or with his injuries" at the time the original complaint is filed. General Motors Corp. v. Superior Court (Jeffrey), 55 Cal.Rptr.2d at 880. The ignorance must be real, and not feigned. However, there is no duty on the plaintiff's part to search out facts bearing on a defendant's involvement. Id. at 877, 881.
 
 
 37
 In its moving papers, Saratoga offered a recitation of facts which purportedly showed that the Association "knew everything it needed to know to name Saratoga in its original complaint." In short, these facts showed that Saratoga had three representatives on the board of directors, that other directors and members were aware of Saratoga's involvement on the board, that Saratoga's involvement was recorded in the minutes, and that the Saratoga directors participated in board actions such as retaining a property manager and preparing a budget.
 
 
 38
 The Association contends that in and of itself, none of these facts give rise to a cause of action against Saratoga. Instead, according to the Association, its claims against Saratoga are based on facts that could only be obtained through the discovery process, when they were discovered by the Association's counsel.
 
 
 39
 In reply to the Association's contentions, Saratoga repeatedly makes the point that Saratoga's involvement on the board was well-known, and argues that the Association was not ignorant inasmuch as the decisions made by the board, which included Saratoga representatives, "formed the basis for the Association's complaint." However, this conclusion is far from self-evident. Saratoga argues that the facts uncovered, long after the statute had run, by the Association's counsel during discovery are immaterial, inasmuch as counsel's declaration regarding their discovery fails to show that the Association itself was ignorant of these facts at the time that the original complaint was filed. This is the kind of fact that is difficult to resolve on summary judgment until full discovery is completed and the facts can be pinned down to pages in the depositions. Here, discovery was delayed until the only opportunity to learn facts depended on the efficacy of the "doe" proceedings.
 
 
 40
 In General Motors Corp. v. Superior Court (Jeffrey), the court explicitly addressed the role of "common knowledge" in assessing the plaintiff's ignorance under § 474. The court noted that, in previous cases (including Dover ), where plaintiff has been charged with knowledge of facts thereby precluding use of § 474, the situation giving rise to the cause of action had been patent rather than latent, and thus identifiable through common knowledge. In latent cases, however, the court noted that expert testimony, and not common knowledge, would be necessary to establish the defendant's connection to the cause of action. 55 Cal.Rptr.2d at 882. The defendant in General Motors attempted to rely on Dover and other cases for the proposition that "a plaintiff ... may be charged with knowledge for section 474 purposes notwithstanding the need for expert testimony" to prove the claim against the defendant. Id. at 882 n. 16. Nevertheless, the General Motors court rejected this reading of Dover and related cases.
 
 
 41
 As the court noted in Diekmann v. Superior Court, 220 Cal.Rptr. 602, 614 (Cal.App.1985), "[s]ection 474 allows a plaintiff in good faith to delay suing particular persons named as defendants until he has knowledge of sufficient facts to cause a reasonable person to believe liability is probable. The distinction between a suspicion that some cause could exist and a factual basis to believe a cause exists is critical in the operation of section 474." Thus, "a plaintiff does not relinquish [his] rights under section 474 simply because [he] has a suspicion of wrongdoing arising from one or more facts [he] does know." General Motors v. Superior Court (Jeffrey), 55 Cal.Rptr.2d at 880.
 
 
 42
 Here, the Association's counsel knew that the Bank was a lender, and that the developer was bankrupt. Based on these facts and acting on mere suspicion, counsel included allegations of lender liability in the complaint and named the Bank as a defendant. However, "[t]hat the information then possessed may have been sufficient to have prompted an imaginative attorney to plead a cause of action ... is beside the mark." Breceda v. Gamsby, 72 Cal.Rptr. at 841. Thus, the suspicion which led the Bank to be named as a defendant should have no bearing on whether the Association was ignorant of Saratoga's conduct within the meaning of § 474.
 
 
 43
 Further supporting this position is the policy that § 474 is to be construed liberally, General Motors v. Superior Court (Jeffrey), 55 Cal.Rptr.2d at 879, in order to serve the "strong policy in favor of litigating cases on their merits." Barrows v. American Motors Corp., 192 Cal.Rptr. at 382 (1983). Thus, the court in Parker v. Robert E. McKee, Inc. went so far as to permit the plaintiff to avail himself of "doe" pleading to name a defendant which had once been named in the original complaint but later dismissed. The court reasoned that, inasmuch as plaintiff was relying on later discovery of the defendant's true legal capacity, "well-established law" allowed such an amendment under § 474. Any other result would be, according to the court, "contrary to the beneficial purpose of the statute." 4 Cal.Rptr.2d at 351.
 
 
 44
 If § 474 can forgive a plaintiff's mistaken dismissal of a named defendant to permit the defendant to be brought back in later based on "doe" pleading, then § 474 should be able to forgive the naming of a defendant based on a mistaken suspicion, so that a similarly situated defendant can be brought in later based on "doe" pleading.
 
 
 45
 In conclusion, Saratoga failed to show that the Association had, by the time the original complaint was filed, acquired knowledge that it had a cause of action against Saratoga. Thus, because Saratoga bears the initial burden of demonstrating that the plaintiff was not ignorant for the purposes of § 474, Saratoga has not met this burden. As a result, the burden does not shift to the Association to make an evidentiary showing and Saratoga is not entitled to a grant of summary judgment in its favor.
 
 
 46
 Because we have concluded that the district court erred in requiring the Association to prove that it was ignorant for the purposes of § 474, we do not reach the issues regarding the applicability of the "rule of discovery" or whether the district court erred in denying the Association's Rule 60(b) motion.
 
 
 47
 Summary judgment is vacated without prejudice to the reopening of discovery and the cause is remanded for further proceedings.
 
 
 48
 No party is to recover costs in this court.
 
 
 
 **
 Honorable John S. Rhoades, Sr., Senior United States District Judge for the Southern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 California Code of Civil Procedure § 474 provides in relevant part: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint ... and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly...."
 
 
 [2]
 The issue in Barrows differs slightly from the usual § 474 issue. Most cases, such as the case at bar, deal with the question of whether the plaintiff was ignorant at the time that the complaint was originally filed. Here, the defendants were attempting to show that, although the plaintiff acquired actual knowledge of the defendants after the complaint was filed, the plaintiff unreasonably delayed in amending his complaint to name the defendants, and therefore plaintiff should not be permitted to avail himself of the "doe" procedure. However, because the case focused on a showing of actual knowledge, the court did not view this any differently than the more usual type of case