[No. A060232. First Dist., Div. Two. Nov. 1, 1993.]

DEANNA BALON, Plaintiff and Appellant, v.
ETHEL DROST et al., Defendants and Respondents.

## COUNSEL

Buchta & Murphy and Alfred H. Buchta for Plaintiff and Appellant.

Strickland & Haapala, John E. Haapala and Steven Sheriff Abern for Defendants and Respondents.

## OPINION

KLINE, P. J.—

### INTRODUCTION

Appellant Deanna Balon appeals the trial court's order granting respondent Shawn G. Hurley's motion to quash service of summons and complaint. Appellant contends the trial court erred when it found appellant did not comply with Code of Civil Procedure section 474.[1] We agree, and therefore shall reverse.

### STATEMENT OF THE FACTS AND CASE

On December 28, 1990, appellant was involved in a traffic collision with a vehicle driven by Shawn Hurley (hereinafter respondent), but owned by Ethel Drost. Immediately after the accident, appellant and respondent went to a nearby doughnut shop to call the police and exchange information.

Once inside the doughnut shop, respondent called the police and his girlfriend. Soon after, respondent's girlfriend arrived; she saw respondent

---

[1]All further statutory provisions refer to the Code of Civil Procedure.

give appellant a piece of paper with respondent's name and other information on it. Appellant, however, felt dazed from the collision, and subsequently forgot about the slip of paper and respondent's identity.

Appellant filed a claim with the owner's insurance carrier, the California State Automobile Association (CSAA). Over the next several months, appellant attempted to work out a settlement with CSAA. Appellant never asked CSAA for the name of the vehicle's driver, and CSAA never offered this information.

On December 6, 1991, appellant retained an attorney. At their initial interview, appellant could not tell her attorney the name of the driver of the vehicle. On December 10, 1991, appellant's attorney requested a copy of the accident report from the Oakland Police Department. On December 26, 1991, two days before the one-year statute of limitations under section 340, subdivision (3), was set to expire, appellant's attorney filed a complaint naming Ethel Drost and unknown "Does" as defendants.

Appellant's attorney did not receive the accident report until after the statute of limitations had run. After reading the accident report, he discovered respondent drove the vehicle in question. On January 9, 1992, the attorney filed an amendment to the complaint under section 474 naming respondent as a Doe defendant and declaring—as the statute requires—that appellant did not know respondent's identity when she filed the original complaint.

On January 12, 1992, appellant's attorney served Drost and respondent with a summons and complaint. On February 11, 1992, Drost filed an answer to the complaint. On October 15, 1992, respondent entered a special appearance to bring a motion to quash service of the summons and complaint.

On October 20, 1992, appellant's attorney contacted appellant seeking a written statement that she did not previously know the identity of the driver involved in the accident. Appellant stated she could not recall respondent's identity until her attorney told her respondent's name during their October 20, 1992, communication.

On November 6, 1992, the trial court granted respondent's motion to quash service of the summons and complaint. On December 22, 1992, the trial court denied appellant's motion for reconsideration of the order granting respondent's motion to quash.

On December 30, 1992, appellant filed a timely notice of appeal.

## DISCUSSION

█ Appellant contends the trial court erred in finding she did not comply with section 474 and in granting respondent's motion to quash service of the summons and complaint. We agree, and reverse for respondent's reinstatement as a party defendant.

Section 474 provides, in pertinent part, as follows: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly; . . ." The trial court's decision to grant respondent's motion to quash rested both upon an interpretation of section 474 and upon appellant's conduct.[2] "The trial court's statement of decision [thus] contains both findings of fact and conclusions of law. █ We review the trial court's findings of fact to determine whether they are supported by substantial evidence. [Citation.] To the extent the trial court drew conclusions of law based upon its findings of fact, we review those conclusions of law de novo. [Citation.]" (*Westfour Corp.* v. *California First Bank* (1992) 3 Cal.App.4th 1554, 1558 [5 Cal.Rptr.2d 394].)

█ Under section 474, "[a] plaintiff ignorant of the identity of a party responsible for damages may name that person in a fictitious capacity, a Doe defendant, and that time limit prescribed by the applicable statute of limitations is extended as to the unknown defendant. A plaintiff has three years under section 581a, subdivision (a) after the commencement of the action to discover the identity of the unknown defendant and effect service of the complaint. [Citation.] When the complaint is amended to substitute the true name of the defendant for the fictional name, the defendant is regarded as a party from the commencement of the suit." (*Munoz* v. *Purdy* (1979) 91 Cal.App.3d 942, 946 [154 Cal.Rptr. 472], fn. omitted.)

█ "Section 474, however, . . . is restricted to the knowledge of the plaintiff at the time of the filing of the complaint." (*Munoz* v. *Purdy, supra,*

---

[2]The trial court stated the following:

". . . I think [appellant] ignored as opposed to being just uninformed. And that's a difference. Ignorant is often used incorrectly in speech. And it is used that way in the statute I think. [¶] Because I don't think they meant to say that. But I think that's what she did in fact do. She did ignore the fact that there was another party that she could easily have identified."

"She's got to have a real good reason why she didn't ask [for respondent's name] . . . ."

"She had a duty of inquiry . . . under the cases."

". . . I think that the duty of inquiry kicks in here. And I can't read the statute to say ignorance in the sense that she ignored. Because the case law doesn't read it that way, and that wouldn't be correct. [¶] So to that extent, cases like *Jolly* [*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103 (245 Cal.Rptr. 658, 751 P.2d 923)] agree with me that the statute incorrectly uses the term."

91 Cal.App.3d at p. 947; see also *Westfour Corp.* v. *California First Bank, supra,* 3 Cal.App.4th at pp. 1559-1560; *Sobeck & Associates, Inc.* v. *B & R Investments No. 24* (1989) 215 Cal.App.3d 861, 867 [264 Cal.Rptr. 156]; *Streicher* v. *Tommy's Electric Co.* (1985) 164 Cal.App.3d 876, 882 [211 Cal.Rptr. 22].) "The lack of knowledge of the true name of the defendant . . . must be 'real and not feigned.' [Citation.] . . . 'Ignorance of the facts is the critical issue, and whether it be due to misinformation or negligence is not relevant.' [Citations.]" (*Munoz* v. *Purdy, supra,* at p. 947; see also *Irving* v. *Carpentier* (1886) 70 Cal. 23 [11 P. 391]; *Westfour Corp.* v. *California First Bank, supra,* at pp. 1559-1560.) Under section 474, therefore, a plaintiff has no duty "to exercise reasonable diligence prior to filing the complaint to discover the defendant's identity." (*Snoke* v. *Bolen* (1991) 235 Cal.App.3d 1427, 1432 [1 Cal.Rptr.2d 492].)

▇▇▇ In his brief and during oral argument respondent relied on *Schroeter* v. *Lowers* (1968) 260 Cal.App.2d 695 [67 Cal.Rptr. 270] for the proposition that a plaintiff's ignorance of a defendant's true name "must not be wilful ignorance, or such as might be removed by some inquiry or resort to information easily accessible." (*Id.,* at p. 700.) This is not only dicta, since the plaintiff in *Schroeter* was not ignorant of a defendant's name, but it incorrectly states the law. In fact, our Supreme Court has expressly concluded that section 474 imposes no duty of inquiry. In *Irving* v. *Carpentier, supra,* the court explained, "[w]hether [the plaintiff's] ignorance is from misfortune or negligence, he is alike ignorant, and this is all the statute requires." (*Irving* v. *Carpentier, supra,* 70 Cal. at p. 26; *Hoffman* v. *Keeton* (1901) 132 Cal. 195, 197 [64 P. 264]; *Munoz* v. *Purdy, supra,* 91 Cal.App.3d at p. 947.) In light of this controlling Supreme Court authority we decline to follow *Schroeter.*

In this case the trial court ignored the relevant Supreme Court cases and concluded appellant "had a duty of inquiry," and that "[s]he did ignore the fact that there was another party that she could have easily identified." ▇▇▇ The court apparently was under the erroneous impression that appellant could not employ section 474 if she acted negligently; however, California law clearly states that ". . . constructive or legal knowledge will not deprive [appellant] of the [section 474] remedy." (*Sobeck & Associates, Inc.* v. *B & R Investments No. 24, supra,* 215 Cal.App.3d at p. 867.)[3] Clearly, if a plaintiff has no duty to exercise even "reasonable diligence" to discover a

---

[3]The trial court incorrectly relied on "cases like" *Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d 1103. *Jolly* involved the discovery rule applicable to the commencement date of a statute of limitations. In that situation, ". . . the statute of limitations begins to run when the plaintiff suspects or *should* suspect [wrongdoing]." (*Id.,* at p. 1110, italics added.) A plaintiff's "duty to reasonably investigate" (*id.,* at p. 1112) regarding the accrual date of a cause of action,

defendant's name (*Snoke* v. *Bolen*, *supra*, 235 Cal.App.3d at p. 1432), he or she may act unreasonably in failing to ascertain a defendant's name and still claim the benefit of section 474. We thus cannot agree with our dissenting colleague's view that section 474 imposes on plaintiffs the obligation to discover " 'readily accessible' information." (Dis. opn., *post*, at p. 493.)

■ The record indicates appellant did not know respondent's identity when she filed her complaint. Even though appellant may have acted negligently when she forgot respondent's name and never inquired about it, appellant named Doe defendants in her original complaint, which she filed before the statute of limitations expired. The subsequent amended complaint naming respondent—which appellant filed a mere two weeks after the original complaint—thus "relate[d] back to satisfy the statute of limitations." (*Streicher* v. *Tommy's Electric Co.*, *supra*, 164 Cal.App.3d at p. 882; see also *Munoz* v. *Purdy*, *supra*, 91 Cal.App.3d at p. 946; *Snoke* v. *Bolen*, *supra*, 235 Cal.App.3d at p. 1431.)[4]

The record, however, also may be read to suggest the trial court found appellant was guilty of more than mere negligence. Specifically, the court stated, "I think [appellant] ignored as opposed to being just uninformed. . . . She did ignore the fact that there was another party that she could easily have identified." Although we believe the trial court's statement merely reflects appellant's negligence, if the court instead meant appellant *willfully* or *intentionally* misused section 474, the record does not support such a finding.

Nothing in the record indicates appellant named a "defendant in a fictitious manner hoping to surprise [respondent] by reviving 'claims that have been allowed to slumber until evidence has been lost, memories have faded and witnesses have disappeared.' [Citation.]" (*Munoz* v. *Purdy*, *supra*, 91

---

however, does not apply to a plaintiff's ability to include and later identify Doe defendants in a complaint under section 474.

[4]Respondent asserts that California courts have not expanded the lack of a reasonable inquiry standard "into an imprimatur for *unreasonable* conduct." (Italics in original.) Section 474, however, "enable[s] a plaintiff to avoid the bar on the statute of limitations where [the plaintiff] is ignorant of the identity of the defendant." " '[W]hether [the ignorance] be due to misinformation or *negligence* is not relevant.' [Citation.]" (*Munoz* v. *Purdy*, *supra*, 91 Cal.App.3d at pp. 946, 947, italics added.)

As far as we can discern, if the law permits negligence, then the law provides an "imprimatur for unreasonable conduct." Moreover, the Legislature apparently viewed this imprimatur for unreasonableness as necessary both to offset the harsh effect of the statute of limitations when a plaintiff does not know a defendant's identity and to advance the state's interest in deciding cases on their merits. (See *Munoz* v. *Purdy*, *supra*, 91 Cal.App.3d at pp. 946-947; *Sobeck & Associates, Inc.* v. *B & R Investments No. 24*, *supra*, 215 Cal.App.3d at p. 867.)

Cal.App.3d at pp. 946-947.) To the contrary, the record reveals appellant felt she could settle with CSAA directly, but when the statute of limitations date approached, she decided to retain an attorney to file a complaint. When appellant's attorney inquired about the identity of the driver appellant could not recall respondent's name, either due to her mental state at the time of the accident or her own forgetfulness.[5] The fact appellant amended her original complaint after only two weeks further indicates she had no design to use section 474 beyond its intended purpose, for such a short period of time could not have significantly prejudiced respondent or provided an advantage to appellant.

Appellant's conduct thus demonstrates carelessness, not a willful misuse of section 474. If the trial court believed appellant had acted more than negligently, therefore, the record does not support that finding with substantial evidence. (See *Westfour Corp.* v. *California First Bank, supra,* 3 Cal.App.4th at p. 1558.) Accordingly, the trial court erred when it granted respondent's motion to quash service of the summons and complaint.

The judgment is reversed and remanded for respondent's reinstatement as a party defendant. Appellant shall recover costs on appeal.

Benson, J., concurred.

**PHELAN, J.,** Dissenting.—The issue presented by this case is whether "forgetting" the name of the driver of a vehicle who causes a plaintiff injury amounts to genuine ignorance under the "Doe" amendment statute. (Code Civ. Proc., § 474 (hereafter section 474).) The majority answers this question "Yes" and equates appellant's claimed memory lapse of the clearly once known fact of the name of respondent as the driver who struck and caused her injury with the "real" lack of knowledge required by section 474. (*Snoke* v. *Bolen* (1991) 235 Cal.App.3d 1427, 1432 [1 Cal.Rptr.2d 492]; *Munoz* v. *Purdy* (1979) 91 Cal.App.3d 942, 947 [154 Cal.Rptr. 472].) I would not do so and therefore respectfully dissent.

Respondent's declaration in support of his motion to quash service of summons recited: "3. Immediately after the collision, I walked up to DEANNA BALON's vehicle and asked if she was alright. She stated that she was surprised that she had been in an accident but that she was not injured. She and I decided to go across the street to a doughnut shop at the corner of Broadway and 49th Street in Oakland to call the police and exchange

---

[5]In fact, respondent apparently believed appellant used section 474 "to relieve [herself] from the consequences of her own forgetfulness." From our perspective, forgetfulness indicates a degree of carelessness, not willful design.

information. [¶] 4. When we arrived at the doughnut shop, I immediately called the police to report the accident. I then called my girlfriend, Christine Renner, and asked her to meet me at the doughnut shop. She lives nearby and arrived within five minutes of my call, even before the police arrived. [¶] 5. DEANNA BALON and I realized that we needed to exchange identification, insurance and license information. Neither of us had a pen. I recall that we had to ask the counter attendant at the doughnut shop to loan us pens. I then handed DEANNA BALON my driver's license and observed her copy down the information on it. My girlfriend, Christine Renner, was present at the time and also observed DEANNA BALON copy down the information from my license." Respondent's girlfriend (granddaughter of the owner of the car respondent was driving) submitted a declaration in which she stated, "I personally observed SHAWN HURLEY introduce himself to DEANNA BALON."

Appellant's declaration dated October 26, 1992, submitted in opposition to the motion to quash, recited: "Only on October 20, 1992 did I ever learn the name of the driver of the other vehicle that rearended me on December 28, 1990." In a further declaration dated November 14, 1992, submitted with the motion to reconsider, appellant amplified her previous declaration as follows: "2) After being rearended by Defendant Hurley, I was very dazed and disoriented. I had trouble thinking clearly. [¶] 3) Immediately after the accident, I could not get out of my car for a while. When I got out of my car, I went into a nearby doughnut shop to call the police. Defendant Hurley was on the telephone in the doughnut shop talking to his girlfriend. I asked him to get off the telephone so that I could call the police. By the time I finished calling the police, Hurley's girlfriend arrived at the doughnut shop. I was still so dazed I do not remember who wrote down some information but I remember receiving a small piece of blue paper with some information from Hurley and his girlfriend on it. However, I *do not* know what happened to that piece of paper. I never saw that piece of paper again after the day of the accident. I remembered this after Defendant stated this in his papers responding to my Declaration in Opposition to Defendant's Motion to Quash. [¶] 4) I think the reason why my memory of the events which took place immediately following the accident is so foggy is because I was injured, dazed, angry, confused and in need of medical attention. At no time after I received medical help did I see a piece of paper with Shawn Hurley's name on it nor did I hear or learn his name. [¶] 5) I was so dazed and disoriented the day of the accident that when I got to work I could not even remember some of the names of my co-workers."

In contrast to the foregoing is the following deposition testimony given by appellant some six months prior to executing her declarations. At that time

she was questioned as follows: "Q. Did you tell any of your treating doctors or practitioners that the car hit you going 65 miles an hour? [¶] A. Yes. [¶] Q. Who did you tell that? [¶] A. I believe I told that to Dr. Jensen. Maybe Dr. Unger, too. [¶] Q. Now, do you remember two ambulances stopping at the scene? [¶] A. Yes. [¶] Q. Did the ambulances ask you if you'd like to be taken to the hospital? [¶] A. Yes. [¶] Q. Did you refuse? [¶] A. Yes. [¶] Q. Did you refuse because you didn't feel you were injured at the time? [¶] A. I refused because I had no broken bones or injuries that I could see, and there—the policeman said that they had injuries and accidents all over that morning." It is also noteworthy that the police report stated: "No injuries reported."

Plaintiff's claim of a "foggy" memory of the events immediately following the accident is belied by her further deposition testimony detailing events after the accident. She testified: "Q. Did you get out of your car at the scene of the accident? [¶] A. Yes. I went into the doughnut shop. [¶] Q. Did you talk with the other driver in the doughnut shop? [¶] A. I asked him to get off the phone so I could call the police. [¶] Q. Did he do that? [¶] A. After a while. [¶] Q. Did you have trouble with him? [¶] A. I don't think I had trouble with him. He just was more interested in talking to his girlfriend than he was to letting the police know that—about the accident. [¶] Q. Did you see the girlfriend at the scene? [¶] A. Uh-uh. [¶] Q. Did she arrive before or after the police? [¶] A. She arrived before the police. [¶] Q. Did you tell her that you thought you were injured? [¶] A. I didn't talk to her at all. [¶] Q. Did she ask you if you were injured? [¶] A. She didn't talk to me at all. And I can't recall even—they were having a very deep conversation between the two of them. [¶] Q. Did he seem to be doing all right with his injuries, or could you tell? [¶] A. I asked him how he was feeling, would he like to come to the hospital. He said he was gonna go home with his girlfriend. [¶] Q. Okay. [¶] A. I suggested to him that he—maybe he should come to the hospital, because he was very pale. [¶] Q. Was he nervous? Did he say anything about being concerned about the car? [¶] A. He was—well, the policeman made a comment about him. [¶] Q. What was that? [¶] A. 'The poor bastard.' [¶] Q. Do you have any—did you understand what he was talking about? [¶] A. He was getting a lot of heck from his girlfriend. Heavy duty. [¶] Q. Did you—did he tell you or anybody at the scene that you heard that that was his girlfriend's grandmother's car? [¶] A. Yes. Yes. I heard him say that it was his grandmother's car. Her grandmother's car."

The majority conclude appellant "felt dazed from the collision, and subsequently forgot about the slip of paper and respondent's identity." (Maj. opn., *ante*, p. 486.) I find this conclusion suspect, but nevertheless am willing to accept it for purposes of this discussion.

The trial court found that appellant simply "ignored" the knowledge she undeniably possessed at the time her complaint was filed—that is, she met with respondent after the accident, exchanged names, and gave the police a report. The trial court concluded that plaintiff "clearly knew that there was somebody else involved, and made no effort to find out who they were. And essentially could have known when the complaint was filed. Just never bothered to ask. That's not the sort of mistake that I can give you relief for, even under *Munoz*. [¶] . . . [¶] . . . I think she ignored as opposed to being just uninformed. And that's a difference. . . . [¶] . . . She did ignore the fact that there was another party that she could easily have identified."

In my view the observation of the court in *Ingram* v. *Superior Court* (1979) 98 Cal.App.3d 483, 491 [159 Cal.Rptr. 557] is apropos: "While we recognize the Supreme Court's liberal attitude toward allowing amendments of pleadings to avoid the harsh result imposed by a statute of limitations, that attitude is not unfettered by reasonable requirements. Some discipline in pleading is still essential to the efficient processing of litigation." Moreover, "[t]he policy behind the statute of limitations is equally as meritorious a consideration as is the policy of trying cases upon their merits." (*Scherer* v. *Mark* (1976) 64 Cal.App.3d 834, 844 [135 Cal.Rptr. 90].) And, while I have no quarrel with the settled rule under section 474 which absolves a genuinely ignorant plaintiff of any duty to discover the identity of a "Doe" defendant or of the facts which give rise to a cause of action against a party whose identity is known, the facts of this case do not fall within that principle. In short, the "ignorance" required by section 474 should not be equated with forgetfulness. Here, plaintiff not only once knew the identity of the driver of the car which struck her, she also knew he was the boyfriend of the granddaughter of the car's owner whom she sued.

In *Schroeter* v. *Lowers* (1968) 260 Cal.App.2d 695 [67 Cal.Rptr. 270], the court observed that a plaintiff's ignorance of the true name of a defendant "must not be wilful ignorance, or such as might be removed by some inquiry or resort to information easily accessible." (*Id.* at p. 700.) The majority dismisses this proposition as dicta and also as contrary to the venerable Supreme Court decision in *Irving* v. *Carpentier* (1886) 70 Cal. 23 [11 P. 264]. (See also *Munoz* v. *Purdy, supra,* 91 Cal.App.3d at p. 947 [similarly treating the comment as dicta].) However, even the *Irving* court impliedly recognized that where resort to "readily accessible" information is available to ascertain a true name, a tardy "Doe" amendment should not be allowed. Thus, the court observed, "Sometimes there is no means *readily accessible* of ascertaining the true names. The statute above referred to was enacted to afford a remedy in such cases." (*Irving* v. *Carpentier, supra,* 70 Cal. at p. 26, italics added.)

The "burden of discovery" which the early Supreme Court refused to impose in *Irving* and in *Hoffman* v. *Keeton* (1901) 132 Cal. 195 [64 P. 264] (also cited by the majority), involved the search of title records in a county recorder's office. Here, by contrast, a simple telephone call, even to plaintiff's own insurer, would have "refreshed" her failed recollection of the driver's name. I believe that this is a trivial burden of rediscovery of "readily accessible" information which section 474 should require. (*Irving* v. *Carpentier*, *supra*, 70 Cal. at p. 26.) The majority's decision allows a plaintiff to "forget" a defendant's identity, ignore the abundant available sources for relearning it, and treat her no differently than plaintiffs in complex product liability cases, medical malpractice cases and similar matters, who are excused from the burden of discovery. This is simply a case of "wilful ignorance" (*Schroeter* v. *Lowers*, *supra*, 260 Cal.App.2d at p. 700), and I would construe the trial judge's comments as so finding. Thus, I would conclude there was no good faith, bona fide ignorance as required by section 474.