Filed 10/28/20  Sunderland v. Tombakian CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| GWEN SUNDERLAND, | D075807 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2016-00015260-CU-PA-NC) |
| PAUL TOMBAKIAN, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Wingert Grebing Brubaker & Juskie and Colin H. Walshok for Plaintiff and Appellant.

Winet Patrick Gayer Creighton & Hanes and Kennett Lawrence Patrick, Tifanie H. Stern, Victoria Beckel for Defendant and Respondent.

Plaintiff and appellant Gwen Sunderland appeals from a judgment entered after a bench trial on her complaint against defendant and respondent Paul Tombakian[1] arising out of a car accident.  The sole issue for

---

[1]    To avoid confusion, we at times refer to Paul Tombakian's wife Ann Tombakian by her first name and to respondent as Tombakian.

trial was whether an amendment to Sunderland's complaint replacing Tombakian with a fictitious defendant related back to the original complaint's filing in accordance with Code of Civil Procedure[2] section 474. Following trial, the court dismissed the action under the section 335.1 two-year statute of limitations, finding there was "readily available information" from which Sunderland could have identified Tombakian.

Sunderland contends the relation-back doctrine rendered her complaint timely and Tombakian waived any statute of limitations defense by not pleading it as an affirmative defense in his answer. Sunderland maintains she may raise the latter claim as a new theory for the first time on appeal because it is a question of law on undisputed facts. We reject Sunderland's waiver argument. On the merits, we hold the trial court correctly assessed for purposes of section 474 whether information readily available to Sunderland would have disclosed Tombakian's identity. We further conclude its factual findings are supported by substantial evidence. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On May 10, 2014, Sunderland was involved in a motor vehicle accident with Tombakian. Tombakian was driving with Ann as a passenger. Sunderland and Tombakian exchanged information at the scene. Sunderland used her cell phone to photograph Tombakian's driver's license and insurance card, as well her own vehicle. Sunderland also called police, who responded and collected information from both drivers. She knew police would prepare a report about the accident. California Highway Patrol (CHP) records show a report was prepared on May 11, 2014.

---

[2]    Undesignated statutory references are to the Code of Civil Procedure.

Within a few days, Sunderland contacted her insurance agent at State Farm Insurance Company (State Farm) and reported that she had had an accident with a male driver. She also corresponded with an adjuster at Tombakian's insurer, Wawanesa, who sent her a letter identifying Ann as the insured. The day after the accident Tombakian also contacted Wawanesa to report the accident. Days later, State Farm sent a letter addressed to Paul Tombakian. About a week after the accident Wawanesa accepted liability for it. At some point, Wawanesa obtained a copy of the police report.

In May, June and July 2015, Wawanesa adjuster Edna Johnson-Turner, who was handling the matter, sent letters to Sunderland advising her they wished to settle her bodily injury claim. Sunderland responded to one letter in early June. Johnson-Turner included a release in a July 31, 2015 letter identifying Ann and Paul Tombakian as the insureds.

In November 2015 Sunderland hired counsel. At some point, she provided them with paperwork and letters she had received, including Johnson-Turner's letters dated May 21, 2014, and July 31, 2015. Before filing her complaint Sunderland did not look for the picture she had taken of Tombakian's driver's license or insurance information, nor did she attempt to obtain the police report. She did not call State Farm to get information about Tombakian or ask his insurance company about him. The first time Sunderland saw the police report was at her deposition.

Sunderland filed her complaint on May 9, 2016, naming only Ann Tombakian and Doe defendants. In June 2016, Sunderland's counsel prepared a demand letter identifying "Mr. Tombakian" as the driver of the vehicle that caused the accident. In March 2017, Sunderland filed an amendment inserting Paul Tombakian's name in place of Doe 1. In August

3

2018, Sunderland filed a second amended complaint naming Paul Tombakian as a defendant.

The court bifurcated the matter and proceeded to conduct a bench trial solely on the issue of whether Sunderland's amendment naming Tombakian related back to the complaint's original May 9, 2016 filing date.

At trial, Sunderland testified she did not recall seeing Johnson-Turner's May, June and July letters because she had left her home in May 2015 to live in Savannah, Georgia for six months. She did not recall seeing the release included in the July 31, 2015 letter with Tombakian's first and last name on it. She testified she would not have received letters from Tombakian's insurer sent after the end of June 2015. She retained and produced the photographs of her vehicle on her cell phone, which was the same phone she used to photograph Tombakian's driver's license. Sunderland admitted she did not look for Tombakian's driver's license photograph or insurance information before filing her complaint. Because Wawanesa had accepted liability, Sunderland did not think she needed the police report and did not see any reason to obtain it.

Sunderland's counsel testified that during his initial consultation with Sunderland she could not recall the name of the other driver involved in the accident. Sunderland mentioned she had photographs of the driver's license and insurance card in her possession, and counsel asked to see her phone, but the photographs were not there. Counsel testified that Sunderland said she probably deleted them. Counsel testified that though Sunderland had authorized him to do so, he never contacted the CHP to obtain a copy of the police report, which he acknowledged would identify Tombakian as the other vehicle's driver. According to counsel, he was told in November 2015 that CHP had no report. He was finally able to get a copy of the police report in

4

March 2017.  Counsel denied seeing a copy of the release attached to Johnson-Turner's July 31, 2015 letter.  He did not contact Sunderland's State Farm agent or think to ask for information about the other driver involved in the accident before May 10, 2016.  Counsel knew before May 10, 2016, that the male driver had caused the accident and that Ann Tombakian was not the driver.  He admitted it would have been easy to call State Farm and ask for a copy of the police report.  Before May 10, 2016, he never spoke with a State Farm representative or agent, and he did not mail in a request to the CHP to obtain information regarding Tombakian.  However, he reviewed multiple pieces of correspondence from Wawanesa and none of them referred to Paul Tombakian as the insured.

State Farm representative Michael Pacino testified based on claims file notes that Sunderland gave State Farm notice of the accident at approximately 11:00 a.m. on May 12, 2014.  The information provided included Paul Tombakian's name and his address.  Based on the report, State Farm sent correspondence to Tombakian.  State Farm obtained the police report for the accident on May 20, 2014, via a third party vendor, LexisNexis.  Pacino testified that if Sunderland or her attorneys had contacted State Farm it would have provided the police report to them.[3]

Wawanesa claims investigator Paul Flores testified that on June 13, 2016, he received correspondence from Sunderland's counsel referring to the responsible party as Mr. Tombakian.  He testified that he was not contacted

---

[3]    On cross-examination, Pacino acknowledged that he had testified earlier in his deposition that Sunderland's agent had reported the accident. He testified at trial that he was mistaken and was retracting that testimony based on additional information he had learned about the way claims were reported.  He also testified he did not know whether Sunderland or her counsel had a subscription to LexisNexis.

by anyone from Sunderland's attorney's office before May 10, 2016, to request the identity of the driver of the other vehicle. He would have given out that information. Flores also stated that Wawanesa had obtained a copy of the police report on May 20, 2014, and he would have provided it to Sunderland's attorneys had they asked for it.

The trial court dismissed the case under the two-year statute of limitations, finding under *Woo v. Superior Court* (1999) 75 Cal.App.4th 169 (*Woo*) that "there was readily available information that would have reflected that the driver of the vehicle was Paul Tombakian. That information was not a significant burden for [Sunderland or her] counsel to obtain. And since they did not and [Tombakian] was not named, this two-year statute applies." Thereafter, the trial court entered judgment consistent with its oral ruling.[4]

## DISCUSSION

### I. *Standard of Review*

On appeal from a judgment after a bench trial, we review the trial court's conclusions of law de novo and its factual findings for substantial evidence. (*Orange County Water District v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 313; *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) " 'Under the substantial evidence standard of review we examine the entire record to determine whether there is substantial evidence supporting the factual determinations of the trial court [citation], viewing the evidence and resolving all evidentiary conflicts in favor of the prevailing party and indulging all reasonable inferences to uphold the judgment.'

---

4    The judgment states in part: "Based upon the evidence presented, the court holds that (a) information with defendant's identity was readily available; (b) there was no significant burden for plaintiff to obtain the readily available information; and (c) plaintiff did not obtain the readily available information."

6

[Citations.] 'An appellate court does not reweigh the evidence or evaluate the credibility of witnesses, but rather defers to the trier of fact. [Citations.] "The substantial evidence [standard of review] applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial." ' " (*Vasquez v. LBS Financial Credit Union* (2020) 52 Cal.App.5th 97, 109.)

"Under the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48.) Only prejudicial error is grounds for reversal. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.) Where the trial court misapplies a legal standard, the appellant must show the error was prejudicial, "i.e., there is a reasonable probability the [appellant] would have obtained a more favorable result if the court had applied the correct standard." (*Orange County Water District v. Alcoa Global Fasteners, Inc.*, *supra*, 12 Cal.App.5th at pp. 313-314.)

## II. *Legal Principles*

"The general rule is that an amended complaint that adds a new defendant does not relate back to the date of filing of the original complaint and the statute of limitations is applied as of the date the amended complaint is filed, not the date the original complaint is filed. [Citations.] A recognized exception to the general rule is the substitution under section 474 of a new defendant for a fictitious Doe defendant named in the original complaint as to

7

whom a cause of action was stated in the original complaint." (*Woo*, *supra*,75 Cal.App.4th at p.176.)[5]

"Section 474 allows a plaintiff who is ignorant of a defendant's identity to designate the defendant in the complaint by a fictitious name (typically, as a 'Doe'), and to amend the pleading to state the defendant's true name when the plaintiff subsequently discovers it." (*McClatchy v. Coblentz, Patch, Duffy & Bass, LLP* (2016) 247 Cal.App.4th 368, 371.) "If the requirements of section 474 are satisfied, the amended complaint substituting a new defendant for a fictitious Doe defendant filed after the statute of limitations has expired is deemed filed as of the date the original complaint was filed." (*Woo*, *supra*, 75 Cal.App.4th at p. 176, citing *Austin v. Massachusetts Bonding & Ins. Co.* (1961) 56 Cal.2d 596, 599.) The purpose of section 474 is to enable a plaintiff to avoid the bar of the statute of limitations when he or she is ignorant of the defendant's identity. (*Austin*, at p. 602; *Davis v. Marin* (2000) 80 Cal.App.4th 380, 386.)

This relation-back aspect of section 474 requires that the plaintiff be "genuinely ignorant" of the defendant's identity at the time he or she filed the original complaint. (*Woo*, *supra*, 75 Cal.App.4th at p. 177.) "The omission of the defendant's identity in the original complaint must be real and not merely a subterfuge for avoiding the requirements of section 474. [Citation.] . . . [I]f the identity ignorance requirement of section 474 is not met, a new defendant may not be added after the statute of limitations has expired even if the new defendant cannot establish prejudice resulting from the delay.

---

5 Section 474 provides in part: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . , and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . . ."

[Citation.] However, if the plaintiff is actually ignorant of the defendant's identity, the section 474 relation-back doctrine applies even if that ignorance is the result of the plaintiff's negligence." (*Woo,* at p. 177.)

In *Woo*, this court held a lower court erred by denying summary judgment on the motion of a medical malpractice defendant, Woo, because Woo had shown the plaintiff was aware of Woo's identity before she filed her complaint, and thus she was not entitled to use section 474 to amend her complaint after the statute of limitations had run. (*Woo, supra*, 75 Cal.App.4th at pp. 180-181.) The plaintiff had alleged in an April 1997 complaint that another doctor misinterpreted a mammogram and performed an incorrect hookwire procedure, resulting in multiple unnecessary operations. (*Id.* at p. 173.) Months later, she produced in discovery February 1996 reports from Woo describing her surgical specimens and the hookwire procedure, and in August 1997 her counsel was provided copies of records showing Woo had interpreted the mammogram and placed the hookwire. (*Id.* at p. 174.) Plaintiff amended her complaint to add Woo as a defendant in February 1998, after which time Woo moved for summary judgment arguing her action was barred by the one-year statute of limitations. (*Id.* at pp. 174-175.) Woo argued the plaintiff learned of his involvement in May 1996, which was when the statute of limitations began to run, and plaintiff's amended complaint was filed more than one year after she discovered her injury. (*Ibid*.) The trial court treated the amended pleading as a functional section 474 substitution, ruled it related back to the date of the original complaint's filing, and denied summary judgment. (*Id.* at p. 175.)

We granted Woo's writ petition and directed the trial court to enter a new order granting the motion for summary judgment. (*Woo, supra*, 75 Cal.App.4th at pp. 180-181.) On the issue of knowledge of Woo's identity, we

9

observed the plaintiff had testified in her deposition that in May 1996, another doctor told her that Woo had misinterpreted her mammogram and incorrectly placed the hookwire, and thus, plaintiff's own testimony demonstrated her actual knowledge of Woo's identity and participation in her claimed injuries prior to her filing the original complaint.  (*Woo*, at pp. 177-178.)  We rejected the plaintiff's inconsistent arguments that she knew but had forgotten Woo's identity, and never knew Woo's identity by the time she filed her complaint, holding that those "conflicting and inconsistent positions permit the inference that [plaintiff's] claimed ignorance of Woo's identity was not actual and in good faith."  (*Id*. at p. 178.)

In so holding, we declined to follow *Balon v. Drost* (1993) 20 Cal.App.4th 483 (*Balon*), in which a majority of the Court of Appeal held a plaintiff's memory lapse caused her to be actually ignorant of the defendant's name for purposes of section 474.  (*Balon*, at pp. 488-489.)  The plaintiff and defendant in *Balon* were involved in a traffic collision.  (*Id*. at p. 485.)  Afterwards, the plaintiff wrote the defendant's name on a piece of paper that she placed in her purse, but forgot about the paper and the defendant's name, and could not give it to the attorney she hired about a year later.  (*Id*. at pp. 485-486.)  The majority held it was of no moment that the plaintiff may have acted unreasonably by failing to ascertain or inquire about the name or that she had an obligation to review readily accessible information, relying on Supreme Court authority stating that section 474 required only ignorance, whether it be from misfortune or negligence.  (*Id*. at p. 488, citing *Irving v. Carpentier* (1886) 70 Cal. 23, 26.)  Under *Balon*, therefore, a plaintiff "may act unreasonably in failing to ascertain a defendant's name and still claim the benefit of section 474."  (*Id*. at p. 489.)  The dissenting justice disagreed, stating the " 'ignorance' "required by section 474 should not be equated with

10

forgetfulness. (*Balon*, at p. 490, dis. opn. of Phelan, J.) The dissent proposed that the plaintiff was not genuinely ignorant for purposes of section 474: "[P]laintiff not only once knew the identity of the driver of the car which struck her, she also knew he was the boyfriend of the granddaughter of the car's owner whom she sued." (*Id.* at p. 493, dis. opn. of Phelan, J.) The dissent stated "a simple telephone call, even to plaintiff's own insurer, would have 'refreshed' her failed recollection of the driver's name," and that the California Supreme Court had implicitly recognized that where resort to readily accessible information was available to ascertain a true name, as in that case, a late "Doe" amendment should not be allowed. (*Id.* at pp. 493-494, dis. opn. of Phelan, J., quoting *Irving v. Carpentier*, *supra*, 70 Cal. at p. 26 ["Sometimes there is no means *readily accessible* of ascertaining the true names. [Section 474] was enacted to afford a remedy in such cases"].)

*Woo* agreed with the dissent in *Balon*: "The [majority's rule in *Balon*] permits plaintiffs to assert they forgot the defendant's identity even though it is uncontested they knew the identity at an earlier time, and relieves them of any obligation to refresh their memory with readily available information. The result is to excise from section 474 the importance of actual ignorance of the name of the defendant, because by mere assertion of memory loss a plaintiff would always be considered ignorant of the name of the defendant." (*Woo, supra,* 75 Cal.App.4th at p. 180.) We held that "when the plaintiff had actual knowledge of the defendant's identity prior to filing a complaint, but has forgotten the defendant's identity at the time of filing the complaint, the plaintiff must review readily available information that discloses the defendant's identity to invoke the section 474 relation back doctrine; otherwise, the plaintiff is not in good faith using section 474." (*Woo, supra,* 75 Cal.App.4th at p. 180.) Thus, we explained, "[i]f the defendant cannot be

11

identified from readily available information, then section 474 is available; if the defendant can be identified from the readily available information, then section 474 is unavailable. This rule retains meaning to the actual ignorance requirement of section 474. . . . In the instant case, the readily available information was contained in [plaintiff's] medical records in her possession from which she obtained [one defendant's] name and in which Woo's identity was also set forth. In our view, [plaintiff] did not avail herself of readily available information that would have refreshed her recollection of Woo's identity; and therefore she is not entitled to use section 474 to amend her complaint after the statute of limitations has run." (*Ibid.*)

### III. *Analysis*

Sunderland contends the relation back doctrine applies to render her amendment adding Paul Tombakian timely filed within the statute of limitations. She asks us to reject *Woo, supra*, 75 Cal.App.4th 169 and follow the rule in *Balon, supra*, 20 Cal.App.4th 483 that a plaintiff need not exercise a duty of inquiry or reasonable diligence before filing a complaint to ascertain the defendant's identity; that section 474 requires only good faith ignorance, which she had. Sunderland maintains she was in fact genuinely ignorant of Tombakian's name at the time she contacted counsel because she had lost the photograph of his driver's license on her phone. She also argues she made use of readily available information in an attempt to ascertain Tombakian's identity, namely her counsel (1) reviewed multiple letters from Wawanesa referring only to Ann Tombakian as the insured; (2) attempted to obtain the police report, which was not available; and (3) spoke with a Wawanesa adjustor to obtain information about the accident and obtain a copy of the police report, to no avail.

12

Our review of these contentions entails two inquiries. First, we decide whether the court erred by adopting the legal theory that Sunderland should have reviewed readily available information that would have revealed Paul Tombakian was the driver on the day of the accident so as to assess whether her complaint was timely under the relation back doctrine. Second, we decide whether substantial evidence supports the court's finding that there was readily available information reflecting that Paul Tombakian was the other driver, and that the information was not a significant burden for Sunderland or her counsel to obtain.

A. *The Trial Court Did Not Err by Following* Woo

The first prong of our inquiry is easily answered. *Woo* is a decision of our own court. As stated, *Woo* disagreed with the majority in *Balon*, *supra*, 20 Cal.App.4th 483, finding *Balon* established an "undesirable rule for the 'I knew but forgot' assertion under section 474." (*Woo*, *supra*, 75 Cal.App.4th at p. 179.) We decline Sunderland's invitation to disregard the rule expressed in *Woo* and follow *Balon*'s contrary holding. Here, it is undisputed that Sunderland had Tombakian's full name and insurance information in her possession after the accident, and she was aware the driver was male and probably Ann Tombakian's husband. She knew responding police collected both of their identities and prepared a report. Under these circumstances, requiring Sunderland to review readily available information so as to "assure [her] good faith . . . [in] seek[ing] to use the section 474 relation-back

13

doctrine" (*Woo*, at p. 180) did not impose a significant burden on Sunderland.[6]

Thus, we conclude the trial court did not err by requiring Sunderland to make an effort to obtain easily accessible information to refresh her memory of the defendant's true name in order to invoke section 474. (*Woo*, *supra*, 75 Cal.App.4th at pp. 179-180.)

B. *Substantial Evidence Supports the Trial Court's Decision*

We further conclude substantial evidence supports the court's finding that information was readily available to Sunderland that would have disclosed Tombakian's name before she filed her complaint. Sunderland was fully aware at all times of Tombakian's role in and responsibility for the accident. Sunderland's possession of photographs of Tombakian's driver's license and insurance card, combined with evidence that she gave Tombakian's name to State Farm representatives permitting State Farm to send a letter addressed to "Paul Tombakian" on May 12, 2014, demonstrate that Sunderland knew Paul Tombakian's full name after the accident. State Farm representatives obtained the police report within days of the accident, and Sunderland's counsel conceded it would have been easy to contact State Farm for the police report. Sunderland also had in her possession and gave to her attorneys Wawanesa's July 31, 2015 letter, which according to Johnson-Turner contained the release referencing Tombakian by first and last name. Sunderland's counsel admitted he never spoke with a State Farm

---

6    In *Munoz v. Purdy* (1979) 91 Cal.App.3d 942, a panel of this court held that for purposes of seeking the benefit of section 474, a plaintiff has no duty to exercise reasonable diligence to ascertain facts before filing a complaint and that even negligent ignorance will permit reliance on the law. (*Munoz*, at pp. 947-948.) To the extent *Munoz* is inconsistent with *Woo*, we decline to follow it.

representative or a State Farm agent, and he did not mail in a request to the CHP for information regarding Tombakian before May 10, 2016.

Here, as in *Balon*, "a simple telephone call, even to [Sunderland's] own insurer, would have 'refreshed' [Sunderland's] failed recollection of the driver's name." (*Balon, supra,* 20 Cal.App.4th at p. 494, dis. opn. of Phelan, J.) But Sunderland did not make any effort to communicate with State Farm so as to obtain Paul Tombakian's name, or attempt to obtain the police report, before filing her complaint. The readily available information was contained in both the police report and in the possession of Sunderland's own insurance company. Further, the record contains inconsistent testimony about the photographs Sunderland took of Tombakian's driver's license and insurance card; Sunderland testified she did not look for the photographs on her cell phone before filing her complaint, but her counsel testified he could not find them after examining her phone and Sunderland told him she had "probably" deleted them before her consultation. Such inconsistency puts these circumstances squarely within the ambit of *Woo*, which presented similar facts. Because there is substantial evidence Sunderland did not avail herself of readily accessible information that would have refreshed her recollection of Tombakian's identity, she is not entitled to use section 474 to amend her complaint. The trial court reasonably held this evidence showed Sunderland did not meet the statute's genuine ignorance requirement.

By pointing to her belief she did not need to obtain the police report, or to her counsel's unsuccessful attempts to obtain the police report from either the CHP or a Wawanesa adjuster, Sunderland focuses on evidence that would support a contrary conclusion rather than evidence indicating the ready availability of information from which Tombakian's identity could have been ascertained. The trial court was entitled to disregard such contrary evidence,

15

and in our review for substantial evidence to support the judgment, we must do so.  (See *Doe v. Regents of University of California* (2016) 5 Cal.App.5th 1055, 1059 ["Under the extremely deferential substantial evidence standard of review, we must disregard the contrary evidence . . . ."].)

IV.  *Sunderland Cannot Raise for the First Time on Appeal Her Claim That Tombakian Waived a Statute of Limitations Defense by Failing to Plead It*

Sunderland contends the trial court erred by dismissing her complaint because Tombakian did not plead the statute of limitations as an affirmative defense, and thus forfeited it.  Apparently acknowledging she raises this argument for the first time on appeal, Sunderland argues it presents a question of law on undisputed facts.

The contention is unavailing.  Sunderland does not show she raised a procedural objection in the trial court based on Tombakian's failure to plead the defense.  The record shows she argued the merits of the statute of limitations defense as if it had been pleaded.  She "may not assert the pleading defect for the first time on appeal." (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 48; see *Hilliard v. A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 392 [" 'Where the parties try the case on the assumption that . . . [an] issue . . . [is] raised by the pleadings, . . . neither party can change this theory for purposes of review on appeal' "]; *Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 313-314; *Roybal v. University Ford* (1989) 207 Cal.App.3d 1080, 1087-1088 & fn. 6 [rejecting plaintiff's claim that defendant waived right to raise res judicata by not pleading it as an affirmative defense; defendant put the defense in issue by motion for summary judgment below, and plaintiff did not argue sufficiency of answer but rather merits of doctrine and had ample opportunity to oppose the defense].)

16

## DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

GUERRERO, J.